GULF OIL CORPORATION, Plaintiff-Appellee, *v.* COUNTY OF DU PAGE, Defendant-Appellant.

(No. 73-214;

Second District (2nd Division)—January 13, 1975.

*Rehearing denied February 11, 1975.*

John J. Bowman, State's Attorney, of Wheaton (Frank J. Petru, Assistant State's Attorney, of counsel), for appellant.

Edward T. Graham, of Glen Ellyn, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is a declaratory judgment action, in which the plaintiff, Gulf Oil Corporation, asks that the zoning ordinance of Du Page County be declared invalid as applied to certain property the plaintiff owns. The property is located at the northwest corner of Butterfield Road and Park Boulevard, in Du Page County, and is presently zoned R-2, single-family residence district. The plaintiff had petitioned the Du Page County Zoning Board of Appeals and the Du Page County Board of Supervisors for rezoning of its property so as to permit the construction and operation of an automobile service station at that location, but its petition was denied by both of those Boards and so it commenced this action. The Circuit Court of Du Page County entered judgment for the plaintiff, finding that the County's zoning ordinance was void as applied to the plaintiff's property, and enjoining the County from enforcing its ordinance so as to prevent the proposed use. The County has appealed from the trial court's judgment.

From the evidence it appears that the property belonging to the plaintiff which it desires to use for a service station is a square tract of vacant land with a frontage of 200 feet on Butterfield Road and 200 feet on Park Boulevard, at the northwest corner of the intersection. Adjoining this square tract is an L-shaped tract, which the plaintiff also owns, having 26.5 feet of frontage on Butterfield and 202.5 feet of frontage on Park Boulevard, on which is located an abandoned schoolhouse along Park Boulevard which is presently used by the Glen Ellyn Little Theatre Group. Adjoining this L-shaped tract is another L-shaped tract of vacant land, with 410.7 feet of frontage on Butterfield and 35 feet of frontage on Park Boulevard. North and west of this there is yet another L-shaped tract, with 900 feet of frontage on Butterfield and 500 feet of frontage on Park Boulevard, occupied by Glenbard South High School. Farther

north along Park Boulevard, past the abandoned schoolhouse, is a church. Farther northwest is the College of Du Page. To the west there is an old farmhouse, and past that, a substantial single-family subdivision. In the area lying north, northwest, and west of the intersection of Butterfield and Park Boulevard and within a distance of a mile from the intersection, there are no commercial uses at the present time; all the uses are residential, or uses permitted in residential districts; and the zoning is entirely residential.

At the northeast corner of the intersection of Butterfield and Park Boulevard there is a 14-acre tract which is presently vacant, but it is zoned for multiple-family residential use and a substantial multiple-family development is planned for it. For some distance beyond this corner tract, as far as half a mile from the intersection, the land north of Butterfield and east of Park Boulevard is zoned and used for single-family residences.

At the southeast corner of the intersection there are a recently constructed gasoline service station and a recently constructed convenience-type food store. An area of 200 feet by 200 feet immediately east of the service station and the food store is zoned for general business uses but is vacant. For some distance beyond the corner parcels, as far as half a mile from the intersection, the land lying south of Butterfield and east of Park Boulevard is zoned residential and is used entirely for residential purposes, except for one church and one school, which are permitted uses.

At the southwest corner of the intersection there is a house which is used as an office by the doctor who lives there, this being a home-occupation use permitted in a residential district. Beyond, as far as half a mile from the intersection, the land south of Butterfield and west of Park Boulevard is zoned and used for single-family residences.

Butterfield Road, south of which lies the only commercial property in the vicinity, was characterized by a witness for each of the parties as a buffer. It is a limited-access freeway, heavily traveled, with a 200-foot right-of-way and a speed limit of 55 miles per hour. It has been widened to four lanes at the intersection. Park Boulevard is also a major highway, with a 100-foot right-of-way and a speed limit of 50 miles per hour north of Butterfield and 40 miles per hour south. It has four lanes north of Butterfield and two lanes south. Vehicular movements at the intersection are controlled by traffic lights.

The plaintiff proposes a gasoline service station for its corner property, with two pump islands on Butterfield and two on Park Boulevard. The station would have "low-profile" lighting which would illuminate just the buildings and the pump islands, and would have no outside vending machines, rental trailers, pennants, or searchlights. It was not to have

deceleration lanes, for the reason that they were not considered necessary, although it was admitted that vehicles entering or leaving a 55-miles-per-hour highway present problems.

The highest and best use of the property, according to the plaintiff's witnesses, was for a service station. The highest and best use, according to a witness for the County, was for multiple-family residences, which would also require rezoning. The plaintiff's witnesses testified that the property was not suitable for either single-family or multiple-family residential development, and could not be developed economically for residential use. A witness for the County testified that a gas station would not be a suitable use, but would be an intrusion of an intensive commercial use into a substantial single-family residential community, an intrusion incompatible with the character of the neighborhood. There was agreement, however, by witnesses for both sides that it was possible to make use of the property for single-family residences.

Witnesses for the plaintiff testified that the corner property was worth $25,000 to $27,000 zoned single-family residential, and $130,000 to $140,000 as a site for a gas station. The property had been bought by the plaintiff in 1968 for business development, with knowledge of its residential classification and knowledge that a gas station could not be constructed there under residential zoning restrictions. Witnesses for the plaintiff testified that permitting use of the corner property for a gas station would have no detrimental effect on neighboring property, but it was conceded that if there were a house on adjoining property it would be harder to sell with a gas station next to it. A witness for the plaintiff testified that a gas station was needed at that location, but he further testified, on cross-examination, that in addition to the gas station at the southeast corner of the intersection, there were two of them east on Butterfield at Route 53, one west on Butterfield at Warrenville, and three gas stations plus a vacant gas station north on Park Boulevard at Roosevelt Road.

The plaintiff takes the position that the zoning ordinance substantially impairs the value of its property without benefit to any surrounding property or any substantial relation to the public welfare and that the findings of a trial court should not be disturbed on appeal unless they are contrary to the manifest weight of the evidence.

■■ Whether a zoning classification bears a substantial relation to the public welfare depends on a number of factors which have been spelled out many times by the Illinois Supreme Court. (See *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 46-47.) The supreme court has, however, also stated: "This court has always considered of paramount importance the question whether the subject property is zoned in con-

formity with surrounding existing uses and whether those uses are uniform and established." (*River Forest State Bank & Trust Co. v. Village of Maywood*, 23 Ill.2d 560, 563.) In another case, in which there were commercial uses to the south across a heavily traveled street, the supreme court said: "We are of the opinion that plaintiff's property takes its residential character from the area to the west, north and east and that it is zoned in conformity with surrounding existing uses, a factor of paramount importance." (*Ryan v. County of Du Page*, 28 Ill.2d 196, 198.) Again, in dealing with a sizeable "valuation differential," the supreme court declared: "This is an omnipresent element and one meriting serious attention—but it is not the dominant consideration. 'Of paramount importance in determining the validity or invalidity of the given classification is the question as to whether it is in conformity with existing uses and the zoning classification of nearby property.'" *Sutter v. Village of Mundelein*, 27 Ill.2d 589, 592-93.

■■■ With regard to the plaintiff's argument that a reviewing court should not disturb a trial court's findings unless they are contrary to the manifest weight of the evidence, it has been said that "this rule of appellate judgment * * * does not always have the same force in zoning cases as it does in other litigation. The overriding consideration in zoning cases is whether the presumptive validity of the ordinance has been overcome and there is, therefore, a dimension of proof not required in most nonzoning litigation. The determination of zoning classifications is a legislative rather than a judicial function and all zoning cases hold that the presumption of validity which accompanies the legislative judgment must be overcome by clear and convincing evidence." (*Chicago Title & Trust Co. v. City of Chicago*, 130 Ill.App.2d 45, 50-51.) Whether the property would be more suitable for multiple-family use is not the question before us. (*Schultz v. Village of Lisle*, 53 Ill.2d 39, 42.) On the other hand, the plaintiff's having bought the property with knowledge of the zoning restrictions is a circumstance which should not be ignored. (See *La Salle National Bank v. City of Evanston*, 57 Ill.2d 415, 430; *Gedmin v. City of Chicago*, 88 Ill.App.2d 294, 303-04.) The supreme court has said, with respect to the plaintiff's burden of proof: "A presumption exists in favor of the validity of a zoning ordinance and the one who attacks such an ordinance has the burden of overcoming the presumption by proving with clear and convincing evidence that, as applied to him, it is arbitrary and unreasonable and is without substantial relation to the public health, morals, safety and welfare." (*Bennett v. City of Chicago*, 24 Ill.2d 270, 273-74.) It has said, further, that where the evidence "accommodates a legitimate difference of opinion as to the reasonableness of the ordinance * * * the

legislative judgment must prevail." *Standard State Bank v. Village of Oak Lawn*, 29 Ill.2d 465, 471.

■■ Under the evidence as we view it, giving appropriate weight to the existing uses and the zoning classification of property for some distance in every direction and particularly north of Butterfield Road, we believe the most that can be said for the plaintiff's case is that it presents a debatable question as to the reasonableness of the restrictions imposed, and so the legislative judgment must prevail. We therefore decide that the plaintiff has not sustained its burden of overcoming with clear and convincing evidence the presumptive validity of the zoning ordinance, and consequently it was error for the trial court to hold the ordinance invalid as applied to the plaintiff's property. Accordingly, the judgment of the Circuit Court of Du Dage County is reversed.

Judgment reversed.

RECHENMACHER, P. J., and T. MORAN, J., concur.