WHEELING TRUST AND SAVINGS BANK, as Trustee, *et al.*, Plaintiffs-Appellees, *v.* COUNTY OF LAKE, Defendant-Appellant.—(JAMES R. MULVIHILL *et al.*, Intervening-Petitioners-Appellants.)

(No. 73-418;

Second District (1st Division)—September 2, 1975.

Jack Hoogasian, State's Attorney, of Waukegan (Michael Sieman, Assistant State's Attorney, of counsel), for appellant County of Lake.

Alfred W. Lewis, of Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellants.

Leonard Bosgraf, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The County of Lake as defendant and James R. Mulvihill and Carl E. Russell as intervening petitioners join in this appeal from a judgment declaring that the County Zoning Ordinance classifying the use of plaintiffs' property as single-family residential is invalid as applied. The judgment order permits the plaintiffs to develop the property for an automobile service station, a convenience food center and other related service stores. The defendants and intervening petitioners contend that the plaintiffs did not sustain their burden of proof by clear and convincing evidence that the zoning ordinance as applied to their property is arbitrary and unreasonable. The defendant County additionally contends that the plaintiffs did not exhaust administrative remedies and therefore may not resort to declaratory judgment procedures.

The failure of the property owners to exhaust administrative remedies is not a substantial issue in our view. Harmon Hendrix and his wife (hereinafter, Hendrix) as title holders had requested rezoning of the property in 1969 and relief was refused after a public hearing before the Zoning Board of Appeals. The denial was confirmed by the Lake County Board of Supervisors. In 1970 Hendrix sold the property under contract to the Wheeling Bank. The bank in turn entered into an agreement to sell to the Dominion Development Company, subject to rezoning. In 1972 Dominion applied for rezoning which was again denied. Hendrix and his wife were in title when the suit was brought and were added as party plaintiffs.

■■ The County argues that the fact that Hendrix, as title holder, did not participate in the 1972 zoning application constitutes a failure to exhaust administrative remedies prefatory to seeking judicial relief. The argument must fail. The purpose of the exhaustion doctrine is to afford local authorities the opportunity to correct errors, as a matter of judicial policy and not as a jurisdictional question. (*Bass v. City of Joliet* (1973), 10 Ill.App.3d 860, 865; *Tomasek v. City of Des Plaines* (1975), 26 Ill.App.3d 586, 595.) Here the local authorities twice had the opportunity

to correct any error in the zoning of the subject site and further appeal to the local body would be a useless act. (See *Van Laten v. City of Chicago* (1963), 28 Ill.2d 157, 159; cf. *La Salle National Bank v. City of Evanston* (1974), 57 Ill.2d 415, 427.) There is no reason therefore to apply the doctrine as a bar to the plaintiffs' suit.

The subject property is a vacant parcel of land located at the southeast corner of Deerfield Road and Saunders Road having a frontage of approximately 232.16 feet on Saunders Road and 327.58 feet on Deerfield Road and containing approximately 52,000 square feet. It is located about a quarter of a mile west of Toll Road Interchange I-94. Saunders Road runs in a north and south direction while Deerfield Road runs generally east and west. The intersection has an average 24-hour traffic count of approximately 11,000-15,000 cars and is governed by four-way stop signs.

The property is classified under the County Zoning Ordinance for single-family residential use. Immediately to the east and adjacent to the subject property fronting on Deerfield Road and west of I-94 is a 10-acre vacant tract of land which has been owned by School District 110 for more than 10 years. Immediately east of the school property but west of the toll road there are 16 homes located in a residential subdivision of 1-acre lots served by septic tanks and individual wells. These homes do not, however, face on Deerfield Road.

Immediately to the north of the subject property on the north side of Deerfield Road lies the Village of Riverwoods. All the property in the village both east and west of Saunders Road is zoned for single-family residential use. Directly across the street from the subject property commencing at the northeast corner of the intersection and continuing east on Deerfield Road is the Village of Riverwoods, a large area of prestigious homes wherein a subdivision known as the Country Club Estates is currently being developed. Diagonally across the street from the subject property, at the northwest corner of the intersection, James Mulvihill, one of the intervening petitioners, lives in a home that he constructed in 1969. The property of Carl Russell, also an intervening petitioner, is located to the north of the Mulvihill property. His home was completed in May of 1971. These homes are set back and face away from the intersection.

Nearby nonresidential uses include Thorngate Golf Club, the fairways of which are located at the southwest corner of the subject intersection and the Thorngate Country Club building, about 400-500 feet south of the subject property which includes a large restaurant, lounge, liquor bar, steam and sauna rooms, club house, swimming pool and parking lot. Further south on Saunders Road the Baxter Laboratories is being developed on a 180-acre site. To the north there are other golf courses, a

dog kennel known as the "Orphans of the Storm" and another dog kennel on Riverwoods Road, a short distance north of the subject property.

Harmon Hendrix, testified for the plaintiffs that he had tried to sell the property for residential purposes for over a year without attracting a buyer and that his prior efforts to sell in 1958 and 1959 were also unsuccessful.

Several expert witnesses testified for the plaintiffs. Arthur Sheridan, a land developer who was the president of the Dominion Development Company and the Yale Development Company and also a real estate broker and appraiser, testified that the Riverwoods Country Club Estates on the northwest corner of the intersection faced away from the intersection and was largely oriented toward interior roadways; that the traffic at the intersection of Deerfield and Saunders was increasing and would continue to do so with the advent of Baxter Laboratories. He stated that the subject property was unlike the residential lots on the northwest and northeast corners of the intersection because those properties were serviced by an interior roadway, whereas the subject property fronted only on Deerfield and Saunders Road.

He testified that because of the heightening traffic and the attendant noise at the intersection and because the subject property was only large enough for a single dwelling under the 40,000-square-foot requirement of the existing zoning ordinance it was simply not suitable for single-family residence development. He gave his opinion that the highest and best use for the site would be a highway oriented business classification. Since there were no local service stations or stores within 1 or more miles west, 1½ miles north, 2 miles south, and 1½ miles east of the intersection, he stated that the proposed use would be a public benefit as well as a benefit to the value of the subject property.

Rolf Campbell also testified for the plaintiffs as an expert witness with a background in city planning and experience as a zoning consultant. He noted that Deerfield Road was a four-lane facility from the toll road west until it narrowed to two-lanes approximately 200 feet from its intersection with Saunders Road. He said that the subject property took its character almost exclusively from Deerfield and Saunders Road. Since the property fronted on these roads, it was his opinion that the subject site was not suitable for its zoned residential use and that the highest and best use would be for the proposed service convenience center. He considered the nearby toll road as a major factor and indicated that the traffic to Baxter Laboratories would exit the tollway at Deerfield Road and travel past the subject site to Saunders Road, then south to Baxter Laboratories. He stated that the proposed convenience center would provide needed facilities to persons traveling to Baxter as

well as to persons living in the community. Although the trend of development north of Deerfield Road appeared to be residential, he stated the need for a convenience center at the proposed site.

James Wolff, a real estate broker and appraiser, testified that the subject property was unsuitable for residential purposes because of its size which precluded orientation of a dwelling away from the objectionable traffic at the intersection. He believed that the highest and best use for the property would be commercial. He estimated the present residential value of the property at $10,000 to $12,000, compared with a value of between $180,000 and $200,000 if the property were to be rezoned commercial. He further stated that the imminent increase in traffic which would result from the completion of Baxter Laboratories was an important factor in the determination of the highest and best use.

William McCann, a real estate broker and appraiser, also testified for the plaintiffs, stating that the subject property was not suited as a residential site. He compared its worth as presently zoned at $15,000 to a value of $150,000 to $200,000 if rezoned for the proposed use. James Healy, a real estate salesman and broker in the area, testified that the value of the subject property as a residential site was $7500 and that if rezoned it would be worth $165,000.

All of plaintffs' experts concluded that there would be no detrimental impact on the surrounding properties if the proposed convenience center were developed on the subject site.

A licensed real estate broker, Edwin Sublett, testified for defendants. He stated that the best use for the subject property was residential and that construction of a service station on the lot would decrease the values of nearby properties. He did not however, make a particular estimate of the decrease in values.

Cranston Byrd, a member of the Lake County Planning Commission, stated that the highest and best use of the subject property would not be for a commercial establishment of any kind. William Hill, a member and chairman of the Planning Commission of the Village of Riverwoods, stated that there was no need for a convenience center at the subject site. Thomas Houle, employed by Lake County as a city planner for the Regional Planning Commission, stated that the highest and best use would be single-family residential.

James Mulvihill and Carl Russell, the intervening petitioners, also testified, claiming that the location of a service station on the subject property would be detrimental to the enjoyment of their properties and would depreciate the value. Mulvihill testified that his property was valued between $65,000 and $70,000. Russell testified that his home was completed in May of 1971 and at that time was worth $59,500.

The trial judge filed a memorandum of opinion and entered a detailed decree with lengthy findings of fact. Among these findings he concluded that the subject property is oriented to Saunders and Deerfield Road and "takes its character from the non-residential uses to the west and south, i.e., the Golf Club and the very substantial development of Baxter Laboratories about one-fourth of a mile south of Plaintiffs' property." He also found "That Plaintiffs' said property is not suitable for single-family residence use, but is suitable for development with a convenience center as proposed, and such proposed use would be its highest and best use and would be a reasonable use of the property * * *." He further found that by reason of the restrictions in the zoning ordinance the market value of plaintiffs' property had been greatly reduced and that there was no reasonable basis in the public welfare requiring the resulting loss.

In determining whether the presumption of the validity of the zoning ordinance has been overcome by clear and convincing evidence showing that it is unreasonable and unrelated to the public health, safety and welfare, we apply traditional zoning standards.[1]

■■ From our review of the record, it appears that the subject property takes its character from the nonresidential uses to the west and south (the Thorngate Golf Course and the Baxter Laboratories) and the highly traveled intersection of Saunders and Deerfield Roads, rather than the residential uses to the north where the properties face away from the intersection.[2] There is credible evidence which supports the finding of the court that the values of nearby properties would not be diminished appreciably by the proposed change in the zoning restriction. And a substantial part of the trial testimony indicates that the property is not suitable for residential purposes. (See *Chicago Title & Trust Co. v. Village of Wilmette* (1963), 27 Ill.2d 116, 125; *Hoekstra v. City of Wheaton* (1975), 25 Ill.App.3d 794, 799; *Stalzer v. Village of Matteson* (1973), 14 Ill.App.3d 891, 902.) Moreover the law does not require that plaintiffs prove that their property is totally unsuitable for single-family residential purposes. It is sufficient that they suffer a substantial decrease in value

---

[1] We will not restate the well-established principles by which zoning cases are to be determined. (But see, e.g., *Chicago Title & Trust Co. v. Village of Wilmette* (1963), 27 Ill.2d 116, 123-24; *Atkins v. County of Cook* (1960), 18 Ill.2d 287, 293; *La Salle National Bank v. County of Cook* (1957), 12 Ill.2d 40, 46.) It has also been repeatedly stated that no one factor is controlling and that each case must be judged on its own facts and circumstances. *La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill.App.3d 1040, 1046.

[2] As a corollary, it is also reasonable to conclude that a convenience center is less objectionable than a dog kennel, two of which are presently located in the vicinity of the subject property. See *First National Bank & Trust Co. v. County of Cook* (1958), 15 Ill.2d 26, 32.

from a classification which bears no substantial relation to the public welfare. (*Atkins v. County of Cook* (1960), 18 Ill.2d 287, 297; *Tomasek v. City of Des Plaines* (1975), 26 Ill.App.3d 586, 593; *Bass v. City of Joliet* (1973), 10 Ill.App.3d 860, 870; *La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill.App.3d 1040, 1048.) Here there is substantial testimony indicating that little public gain will result from upholding the present residential restriction on the subject property and that the construction of the proposed commercial convenience center would, moreover, fulfill a specific local need.

■■ While the fact that the property is worth more for commercial purposes than for residential is not in itself a controlling factor, the record supports the finding that the severe financial hardship imposed upon the plaintiffs far outweighs the small gain which the public would have by the maintenance of the zoning restriction. In such circumstances there is no valid basis for the exercise of the police power. See *Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill.2d 77; *Tillitson v. City of Urbana* (1963), 29 Ill.2d 22, 27; *Chicago Title & Trust Co. v. Co. of Du Page* (1973), 12 Ill.App.3d 386, 389; *Fiore v. City of Highland Park* (1966), 76 Ill.App.2d 62, 74.

■■ Because of the conflicts in testimony common in zoning cases, the credibility of the witnesses is of great importance. Accordingly, in a trial without a jury the trial judge is in a superior position to determine the weight to be accorded the testimony and his finding should not be disturbed unless contrary to the manifest weight of the evidence. (*Atkins v. County of Cook* (1960), 18 Ill.2d 287, 297; *Bass v. City of Joliet*, 10 Ill.App.3d 860, 870.) We cannot say that the findings of the trial judge are against the manifest weight of the evidence and we therefore must affirm the judgment.

Affirmed.

GUILD and HALLETT, JJ., concur.