LA SALLE NATIONAL BANK, Trustee, Plaintiff-Appellee, *v.* THE COUNTY OF DU PAGE, Defendant-Appellant.

Second District   No. 75-457

Opinion filed September 22, 1977.—Rehearing denied December 6, 1977.

RECHENMACHER, P. J., dissenting.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for appellant.

Thomas T. Burke and Robert J. Weber, of Burke & Weber, of Chicago, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This appeal involves the propriety of the zoning classification of certain property located in Lisle Township within the County of Du Page. On May 18, 1970, a petition was filed with the Du Page County Zoning Board of Appeals requesting that a special use permit be granted for a planned unit development (hereinafter referred to as PUD) on the property in question. The property consists of three parcels which would be

contiguous except for the intervention of two roadways. In the proceedings before the circuit court the parcels were designated A, B and C and for the purpose of this appeal we will use the same designations in discussing the property. Parcel A lies directly north of Hobson Road; Parcel B lies between Hobson Road and 75th Street with its eastern boundary being Greene Road; Parcel C is south of 75th Street. Thereafter the Forest Preserve District condemned a portion of Parcel C and the petition was amended. As amended, the total acreage involved in the PUD was to be 235 acres. After a public hearing the Du Page County Zoning Board of Appeals recommended that the special use permit be granted for Parcel A but denied for Parcels B and C. On April 24, 1971, the Du Page County Board of Supervisors granted the requested special use permit for Parcel A. Apparently nothing was done at that time with regard to Parcels B and C. On December 24, 1974, the County Board passed a motion concurring in the recommendation of the Zoning Board of Appeals that the application for a special use permit on Parcels B and C be denied. Thereafter plaintiffs instituted this action, seeking a declaratory judgment that the zoning was unconstitutional as applied to their property or, in the alternative, that the action of the County Board in approving a portion of the requested special use and denying the remainder of it be declared arbitrary and capricious. After trial the circuit court found that the zoning classification was arbitrary, unreasonable and void as applied to Parcels B and C and that plaintiffs might construct their proposed PUD on this property. The County has appealed.

Although technically this appeal involves only the classification of Parcels B and C, we will begin our description of this property and the surrounding uses with Parcel A. Parcel A is generally rectangular in shape, with the south, short side of the rectangle bordering on Hobson Road. To the west of this property is an area of single-family homes located on lots approximately 2½ acres in size. To the north of Parcel A is a large area of 1800 acres which has been approved for a PUD, portions of which are within the County and other portions within the Village of Lisle. The record contains contradictory statements as to whether this approved PUD directly adjoins Parcel A or not. To the east of Parcel A there is a special use approved for the removal of sand and gravel. Hobson Road, a two-lane road with a 100-foot right-of-way, forms the southern boundary of Parcel A.

Almost immediately south of Parcel A is Parcel D, another generally rectangular piece of property which is currently zoned in an R-1 classification which permits only the development of single-family homes on lots of 2½ acres or more. To the west of Parcel B is an area of single-family homes on 2½ acre lots known as Thistle Creek. The northern

boundary of Parcel B is, of course, Hobson Road. The eastern boundary is Greene Road and on the other side of Greene Road is the Green Valley Forest Preserve. The southern boundary of Parcel B is 75th Street.

Again south of Parcel B is Parcel C, which is roughly triangular in shape. The northern side of the triangle is 75th Street. Adjoining Parcel C on the east and south is a continuation of the Green Valley Forest Preserve. The southern boundary of Parcel C is marked by the high power electrical lines of Commonwealth Edison Company. To the west of Parcel C are two farms and directly west of those is a PUD approved by the City of Naperville which is referred to as the Larwin Development. Parcel C is currently zoned R-2 which permits single-family dwellings on lots with a minimum area of 12,000 square feet.

On these three parcels plaintiffs propose to develop a single integrated PUD with connecting streets and facilities designed for use by residents of all three parcels. Attention was given to preserving the natural amenities of the property, such as streams and trees. The buildings are to be so placed that there will be a mix of single-family and multiple-family units as well as a commercial area and recreation sites. Parcel A, which was approved by the County Board, is to be developed with 100 single-family dwellings and approximately 672 multiple-family dwellings. The overall population density is to be 8.68 dwelling units per acre. Also included in Parcel A is 9 acres dedicated for use as a public school, which would serve all residents of the PUD. Parcel B has a planned density of 6.82 dwelling units per acre with 147 of these units being single-family homes and 455 multiple-family units. The single family homes are planned to be distributed mostly along the western edge of the property, which also contains an area of well-established woods. A 4.5-acre portion of Parcel B is to be used for commercial development. In addition, there will be a large baseball field and recreation area, including a clubhouse and swimming pool located on Parcel B. Parcel C is to have an overall density of 5.8 dwelling units per acre composed of 121 single-family dwellings and 258 multiple-family dwellings. Provisions were made for equestrian trails throughout the development, which would allow persons from all parcels to eventually reach the forest preserve area adjoining Parcel C.

Although conflicts in testimony concerning most matters of importance in determining the constitutionality of a zoning classification are to be expected, one thing upon which all witnesses in this lawsuit seem to agree is that the current zoning classifications of Parcels B and C diminish the value of that property. The witnesses disagree, however, with respect to the extent of the difference in value between the property as presently zoned and as proposed. The witnesses for the plaintiff put the

depreciatory effect of the current zoning at between $2,900,000 and $3,275,000. The real estate expert who testified for the County was of the opinion that the depreciatory effect was only $700,000 or, if discount factors were applied, that the difference would be reduced to only $144,000. The plaintiffs' witnesses were also of the opinion that the change in zoning of Parcel A did not significantly increase the value of it because there was no change in the zoning of Parcels B and C, which were also proposed to be incorporated in the PUD. The County's witness was of the opinion that the value of Parcel A was increased by the change in zoning which was granted and that the value of it remained the same, regardless of the zoning classifications of Parcels B and C.

Another point upon which the witnesses seem to agree is that the property in question is physically suitable for development, either under the current zoning as large acreage homesites or as petitioners have proposed in the PUD. Public water supply and sanitary sewer service are both available for the subject property.

The plaintiffs' experts were of the opinion that the highest and best use of the property would be for the proposed PUD on all three parcels. They were also of the opinion that although it would be physically possible to develop Parcel A with the approved portion of the PUD, that it would not be economically and practically feasible to do so. Plaintiffs' witnesses further testified that the trend of development in the area is compatible with the proposed PUD. In the area north of Hobson Road, including Parcel A, there are a number of other PUDs already approved by either the County or the adjoining municipalities. Likewise, there is a PUD located approximately 2,000 feet to the west of Parcel C with the only intervening use being two farms. One of the major factors in explaining this trend of development was the fact that in the last several years the County had developed and now had sewerage treatment facilities available to serve these areas. Plaintiffs' witnesses testified there was a demand for 2½-acre homesites but that it was much less than for the proposed PUD. The witnesses for the County were, however, of the opinion that the highest and best use of the property in question would be under the existing zoning, providing for single-family homes. They testified that there was a demand for 2½-acre homesites in the area and were further of the opinion that there was a greater demand for this type of use than for the uses proposed by plaintiffs. This testimony was, in part, based upon the fact that there is already a considerable amount of property in the area that has been zoned for PUDs which would provide a combination of apartment type uses as well as single-family homes on smaller lots. Despite his testimony as to demand for 2½-acre homesites, the County's real estate expert admitted that he had sold only 7-8 such

estates in the past 6½ years. The beneficial owner of the property testified that since 1971 he had attempted, without success, to sell Parcels B and C as currently zoned for single-family homes.

The various witnesses called to testify disagreed concerning the effect which the proposed development would have upon the adjoining properties, principally the 2½-acre estates adjoining Parcel B. Plaintiffs' witnesses testified that the proposed development would not diminish the value of the adjoining estates at all. They noted that the Thistle Creek area is well established and basically a neighborhood of its own. Along the western border of Parcel B there is a substantial wooded area which would be supplemented by further planting. In addition, the estates, numbering approximately seven, which adjoin Parcel B also contain woods on those portions directly adjoining Parcel B. Under the proposed plan of development, the land closest to the homes in Thistle Creek was to contain single-family homes rather than a multiple-family area. Two residents of Thistle Creek testified for the County that in their opinion the proposed development would depreciate the value of their homes. The appraiser who testified for the County was also of the opinion that the proposed development could depreciate the properties in the surrounding area between 10 and 20%. He admitted on cross-examination, however, that he was hired only six days before he testified, that he had not inspected any of the interiors of the residences in the Thistle Creek development, and that he did not have any sales data involving homes in that area. He did not explain why he apparently felt that all homes in the area would depreciate in value even though some of them are located a considerable distance from the proposed use on Parcel B.

The two homeowners who testified for the County were also of the opinion that the proposed development would increase both drainage and traffic problems which already affected the area. With regard to the drainage problems, it is clear from the testimony of both homeowners that whatever the problems are that they are currently existing and have been for several years, even though Parcel B is currently undeveloped. The testimony further indicates that the pattern of drainage in the area is from west to east so that the properties in Thistle Creek have a higher elevation than Parcel B. Neither of the neighbors was familiar with provisions made for drainage in the proposed development of Parcel B. The County presented no other witnesses who testified to any problems with regard to drainage in the area.

With respect to traffic problems to be generated by the proposed PUD, the County also presented the testimony of a civil engineer employed by the County Highway Department. He had made traffic studies on Hobson Road, Greene Road and 75th Street and testified that the proposed development would substantially increase the traffic on all of these roads.

In his opinion the proposed development would shorten the lifespan of the roads involved and would require that the surface of Greene Road be substantially changed and upgraded. He stated that the increase in the volume of traffic on Hobson Road would probably not require that it be converted from a two-lane highway to a four-lane highway. In his opinion, however, traffic signals would be necessary at either two or three points on Hobson Road, partly because children would have to cross Hobson Road from Parcel B in order to attend the school which would be located in Parcel A. In his opinion traffic signals would also be necessary at two places on 75th Street. He noted that 75th Street would have to be widened from a two-lane to a four-lane road to accommodate traffic from the development, but also admitted that the County already had plans to widen 75th Street to four lanes without regard to this particular development. He further testified that the development would cause a six-fold increase in the traffic accident rate on both Hobson Road and 75th Street if they were left as two-lane roads. At another point in his testimony, however, the witness indicated that there would be an increase in the traffic accident rate if the signalization were not properly done. He also testified that if Parcels B and C were developed as currently zoned, the present roads in the area would not be adequate. On cross-examination he admitted that he did not know that the County had already approved the PUD on Parcel A. It is not clear, therefore, whether his testimony with regard to the increase in the volume of traffic on Hobson Road reflects merely the increase to be generated by Parcel B alone or whether this includes the vehicles from both Parcels A and B. On cross-examination the planning and zoning expert called by plaintiffs testified that in his opinion the proposed development would not create a need for traffic lights on Hobson Road, but he admitted that he had not made any traffic counts on the roads in question.

■■ There is, of course, a presumption in favor of the validity of a zoning ordinance and the party attacking it must prove by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. (See, *e.g., Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899; *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 312 N.E.2d 625.) The factors to be considered in determining the validity of a zoning ordinance are well established and we will not lengthen this opinion by repeating them here. (See, *e.g., Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 324 N.E.2d 406; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) It is also clear that when it is shown that there is no reasonable basis in the public welfare which requires the limitation imposed and the resulting loss to the property owner, the ordinance falls and the presumption of validity is

dissipated. (*La Salle National Bank v. County of Cook; Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239, 353 N.E.2d 61.) Although the legislative determination is conclusive if there is room for a difference of opinion as to the reasonableness of the zoning classification, mere differences of opinion do not require that the court find that the reasonableness of the ordinance is debatable and uphold it. (*Aurora National Bank v. City of Aurora.*) In a trial without a jury the trial court is in a superior position to judge the credibility of the witnesses and determine the weight to be given their testimony and its findings will not be disturbed unless contrary to the manifest weight of the evidence. *La Salle National Bank v. County of Cook; Aurora National Bank v. City of Aurora; Wheeling Trust & Savings Bank v. County of Lake* (1975), 31 Ill. App. 3d 636, 333 N.E.2d 705.

Based on the evidence adduced at trial herein, the County's refusal to grant the special use permit for Parcels B and C can be tied to only two factors. First, the prospective neighbors of the Parcel B development oppose it. Second, it is apparent that the substantial increase in population which will be generated by such a development will necessitate improvements on the roads in the area of the proposed development. With regard to the neighbors' opposition to the proposed development the courts of Illinois have stated:

"* * * the use of property cannot be restricted or limited merely because neighboring property owners so desire, or because they think it might protect the value of their residences." (*Regner v. County of McHenry* (1956), 9 Ill. 2d 577, 582, 138 N.E.2d 545, 547; *Oak Forest Mobile Home Park, Inc. v. City of Oak Forest* (1975), 27 Ill. App. 3d 303, 316, 326 N.E.2d 473, 483.)

There is nothing other than the testimony of the two neighbors which supports their fears that the proposed development will increase their existing drainage problems. In view of the fact that no one who claimed to be familiar with the proposal herein indicated there would be any drainage problems, we must conclude that the neighbors' fears are unwarranted in this respect. There is other testimony which tends to support the neighbors' opinion that the proposed development might depreciate the value of their property. That expert was, however, contradicted by the other experts. Further, the evidence shows that there will be substantial screening and that the proposed plan is designed to minimize any depreciatory effect which the development might otherwise have upon the estates adjoining Parcel B.

It is clear that the proposed development, if allowed, will substantially increase the amount of traffic on the three roads adjoining the development. That, however, can be said of any development of the land in question. As the County's traffic expert admitted, the current road

system would be inadequate even for development under the existing zoning. It is also clear that the County has plans to widen and improve 75th Street without regard to this development. As the trial court aptly stated,

> "* * * since the days of the covered wagon traffic hazards have increased over the years until we have reached the present tempo that is with us today.
>
> And it is a national consequence of the age in which we are living that the more settled the area becomes, the higher the increase in traffic congestion.
>
> And it is a problem which is properly laid before the authorities which have control of such situations, namely, the Highway Department, for the proper control of traffic."

We are not unmindful of the County's argument that one of the important purposes of zoning is to alleviate traffic congestion. (See Ill. Rev. Stat. 1975, ch. 34, par. 3151.) The command of the statute, however, cannot always be taken literally for to do so would stop all development or restrict it all to 2½-acre or larger estates in the rural areas of Du Page County. As the trial judge properly pointed out, the lessening and avoiding of congestion can be accomplished by proper action on the part of the highway authorities while at the same time permitting development.

All of the experts herein acknowledge that there is an obligation to provide for all types of housing within the county, including 2½-acre estates. Nevertheless, on the record before us the testimony of the County's experts that the demand for such estates is greater than for the uses proposed by plaintiffs is untenable. The County's own real estate expert admitted that he sold only slightly more than one such property per year for six years. In addition, the owners of this property were totally unsuccessful in their efforts to sell it for such development. Finally, the substantial costs involved in purchasing a home on a large lot obviously limit the number of potential buyers; the record herein indicates that the minimum value of such an estate in this area is $65,000, with most of them worth substantially more than that.

While we have considered the testimony in this record to the effect that Hobson Road could serve as a buffer between PUD uses to the north and an area of 2½-acre estates to the south, it is also apparent that the area of woods on the western edge of Parcel B would also serve as a buffer zone between the two uses. Likewise, this is not a case in which there would appear to be a significant possibility of a domino effect from the approval of this particular zoning. The 2½-acre estate area is well established and it is not likely that those residences will be demolished to construct more PUDs. The area to the east and south is, of course, owned by the Forest Preserve District and there can be no further expansion of this use in those

directions. It is also to be noted that, indirectly at least, the dispute herein involves the density of residential use to be allowed. Plaintiffs are not attempting to introduce a highly intensive commercial or industrial use into what is now a residential area. While the densities planned by plaintiffs are a substantial increase over what is currently existing in the area, the uncontradicted testimony of plaintiffs' city planning and zoning expert is that anything below 10 dwelling units per acre is considered low density.

■■ We therefore conclude that the trial court's finding that the instant zoning ordinance is unconstitutional as applied to the subject property is not against the manifest weight of the evidence and we see no reason to reverse it. The County, however, further challenges the findings of the trial court on the basis that the trial court did not apply the correct standard in reaching its conclusion. It is true, as pointed out by the County, that in his oral pronouncement of the decision, the trial judge stated:

"*  *  * the greater weight of the evidence lies with the petitioner, and the prayer of the petitioner should be granted."

It is clear from the record herein, however, that the trial judge considered the proper factors in arriving at his decision. We also note that twice during closing argument defense counsel pointed out to the court that plaintiffs had the burden of showing by clear and convincing evidence that the ordinance was unconstitutional. Under these circumstances we believe the trial judge's use of the words "greater weight of the evidence" in announcing his decision was mere inadvertence on his part. The plaintiffs have met their burden of presenting clear and convincing evidence that the zoning ordinance, as applied to their property, has little or no relation to the public health, safety and welfare of Du Page County.

The County has also argued that it is entitled to a new trial because the trial court improperly restricted the defense in presenting redirect testimony. The testimony in question was that of Mr. Bruckner, the County's real estate expert. During direct examination defense counsel brought out that Mr. Bruckner had investigated the uses and zoning in the entire area surrounding Parcels B and C. He then testified that in his opinion Parcels B and C, as presently zoned, would be worth $1,500,000. It was also his opinion that if rezoned to allow the PUD those two parcels would be worth $2,200,000. The difference between these two figures, of course, amounts to $700,000. The witness then applied what he termed a 10% discount factor" based upon his projections concerning the timespan involved in developing Parcels B and C, either as currently zoned or in a PUD. That is how he arrived at his ultimate figure of a reduction in value of only $144,000, which he stated did not take into account any increase or decrease in values in the future but only current market evidence. As part

of the cross-examination, plaintiffs' attorney questioned Mr. Bruckner concerning the value of Parcel A as currently zoned to permit the PUD. The witness testified that he valued Parcel A at $1,475,000. Plaintiffs' counsel then directed a series of questions to Mr. Bruckner which made it apparent that the value which this witness assigned to Parcel A with its special use permit for a PUD was only slightly less than the value which he assigned to Parcels B and C together under the current zoning. This was so even though Parcels B and C combined were considerably larger than Parcel A. On redirect examination defense counsel attempted several times to ask Mr. Bruckner his opinion as to the discounted value of Parcel A with the special use, but the court sustained all objections to that line of questioning.

Initially we must agree with the plaintiffs that the issue to be resolved in this case is the constitutionality of the zoning ordinance as applied to Parcels B and C. In making this determination the relative value of Parcels B and C, as currently zoned and under the proposed special use, is only one of the factors which the trial court must consider. The value of Parcel A, however, is not strictly relevant in making the determination as to the value of Parcels B and C. Certain other information with regard to Parcel A is, of course, relevant in this case because it is one of the surrounding uses. Nevertheless, plaintiff's witnesses had previously been allowed to give opinions of value which included Parcel A. Thus we believe the trial court should have allowed Mr. Bruckner to testify to the discounted value of Parcel A.

■■ It does not follow, however, that the County is entitled to a new trial. Our examination of the record herein indicates that all of the values to which Mr. Bruckner testified on cross-examination were apparently current fair market values of the land, as were all but the last value which he had previously given on direct examination. His opinions in this regard may therefore be compared with the opinions of plaintiffs' experts in determining the diminution in value resulting from the zoning classification of the property. Even accepting Mr. Bruckner's valuation, it is clear that there was a substantial loss in value of the property due to the zoning restrictions. The County has not cited to us, and we are unaware of any authority which would require either the trial court or this court to determine the diminution in value of property imposed by a zoning restriction on the basis of the current value discounted over a period of time to allow for development, but ignoring appropriate inflationary or deflationary trends to be expected during the same time period. Therefore we do not believe that the trial court was obligated to accept any of Mr. Bruckner's testimony with regard to discount factors and could properly base its determination as to the diminution in value caused by the existing zoning on the present fair market value of the property,

considering the testimony of the experts for both the plaintiffs and the County. The fact that the testimony as to discounted values was not as complete as that concerning fair market value could not have been prejudicial to the County, especially since the testimony with regard to the discounted value of Parcels B and C was admitted.

■■ Finally, the County has argued on this appeal that it was denied a fair trial because the judge had prejudged the issues involved in this case. This is a serious charge and for that reason we have carefully read the transcript herein. It is clearly evident to us that the trial judge exhibited a considerable amount of impatience with defense counsel on a number of occasions. Some of these instances occurred when defense counsel was attempting to raise an issue concerning whether or not the plaintiffs herein had standing to bring this action, an issue which the County has elected not to pursue on this appeal. At other times the trial judge apparently had difficulty hearing the questions or comments made by defense counsel. The County contends that the remaining instances relate to the alternative prayer of plaintiffs' complaint, which was that the court declare that the action of the County Board in approving only a portion of the requested special use and denying the remainder of it was arbitrary and capricious. The County contends that "the record indicates that the trial court had reached the judgment that the PUD had to be treated as a single entity *before* all the evidence was presented * * *." The question of whether the proposed PUD was to be treated as a single entity, however, was not the question before the trial court. The question to be decided was whether or not the action of the local officials was reasonably related to the public health, safety and general welfare. As we have previously stated, plaintiffs sustained their burden of proving that the actions involved herein were not so related. The fact that the trial judge apparently felt that he was dealing with one entity or tract of land rather than three has no real bearing upon whether the actions taken with regard to that land were reasonable or not. Zoning officials may act reasonably or unreasonably with regard to any number of pieces of property. Thus we see no merit to the County's argument that it was denied a fair trial because the trial judge had, allegedly, prejudged the issues in this case.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

NASH, J., concurs.

Mr. PRESIDING JUSTICE RECHENMACHER, dissenting:
I respectfully dissent.

In my opinion the presumption of validity of the county zoning ordinance as to Tracts B and C was not overcome by clear and convincing evidence. The main complaint of the appellant is that the trial court on several occasions designated the three parcels as "all one piece" and indicated that it had to be considered such for rezoning purposes, therefore the granting of PUD zoning to Parcel A and not to Parcels B & C was arbitrary and capricious.

I do not feel that the majority gives enough consideration to the question of whether there is a qualitative difference between Parcel A and the other two parcels (Parcels B & C). We have upheld the Zoning Board's use of a road as a boundary line, with the road being regarded as a buffer between different zoning classifications on many occasions. (*Gulf Oil Corp. v. County of Du Page* (1975), 24 Ill. App. 3d 954, 956; *Du Page Trust Co. v. County of Du Page* (1975), 31 Ill. App. 3d 993, 999.) In the proposed PUD there would be an area of commercial development of 4.5 acres, which would be in the parcel south of Hobson Road (Parcel B). Obviously, the wish of the Zoning Board was to prevent the spread of multiuse zoning south of Hobson Road and to retain the natural beauty of that area. This appears to me to be a legitimate purpose and should not be subject to being automatically thwarted by a developer contracting to purchase the property on both sides of a road (in this case, Hobson Road), and then designating the property as a unit, subject to the same PUD zoning.

The County contended that Hobson Road is a natural buffer between Parcel A and Parcels B & C and there is a clear difference in the character of the land uses as between north and south of Hobson Road. It is, they say, reasonable therefore to use a different zoning classification. The County also contends the traffic flow generated along Hobson and Greene Roads would greatly increase the danger of traffic accidents and require traffic controls. These factors, I feel, provide a basis for the difference in zoning.

In this case the record indicates that early in the trial the court stated "* * * It is all one parcel. It is a planned unit development so we can't take it piecemeal. It is all together." The court's decision in favor of the petitioner was inevitable, once the judge had decided—at the outset—that the three tracts were all one piece, because if they were all one piece, there would be no rational basis for splitting the zoning.

However, from certain testimony in the record, it appears the parcels were not under a common ownership and merely because they were lumped together in the proposed PUD does not render the three parcels immune to different zoning treatment. Otherwise, by petitioning for a special use for a PUD a landowner could get favorable zoning as to his

land in every case by lumping it with other tracts which themselves were eligible for rezoning even though the one tract, standing by itself, would not be eligible for such classification. It seems to me if there is a rational basis of distinction, zoning-wise, between the parcels the mere fact that they are all in the proposed PUD does not automatically make them all subject to the same zoning. In the case before us the owner or owners are not required to create a PUD. If they do not get PUD zoning for Parcels B & C they can still make a profit by developing the land as presently zoned—it is a question of how much they will make. A PUD is a special use and no one has a constitutional right to a special use. It is a question of whether the creation of traffic problems and congestion, the crossing of a buffer zone and the possible depreciation of nearby single residences, all testified to, are substantial enough consideration to justify the difference in zoning. I do not think the fact that the PUD zoning was granted for Parcel A on the north side of Hobson Road automatically makes it necessary to grant the same zoning for Parcels B and C on the south side of Hobson Road.

The standard of proof used by the trial court, as enunciated in his summing up before giving his decision, was the "greater weight" of the evidence, but this is not the proper standard. The proper standard (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428) is "clear and convincing" evidence. This is the standard have to apply here.

After reading the briefs and considering the arguments of counsel, it is my opinion that the invalidity of the zoning ordinance, as applied to Parcels B & C, was not established by clear and convincing evidence and the court's standard—the "greater weight" of the evidence is not sufficient to overcome the presumption of validity in favor of the Board's ruling.

I would reverse the trial court.