GARY PETTEE, Plaintiff-Appellant, *v.* THE COUNTY OF DE KALB *et al.*, Defendants-Appellees.

Second District   No. 76-97

Opinion filed May 17, 1978.

Gordon, Brustin & Schaefer, of Chicago, for appellant.

T. Jordan Gallagher, State's Attorney, of Sycamore (James K. Marshall, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

This is an appeal from the determination of the trial court that the De Kalb County Zoning Ordinance is not unreasonable as it applies to plaintiff's property and denying his proposed use of it.

Plaintiff, Gary Pettee, owner of the subject property, applied to the Zoning Board of Appeals of De Kalb County for a change in zoning from A-Agricultural District to E-2 Estate Residential District (single-family residences of not less than one acre) and a small area of B-3 Commercial, Wholesale and General Service District under the De Kalb County Zoning Ordinance. In addition, he requested a special use permit for an aircraft landing field, which can be allowed in an E-2 district under the ordinance. On August 21, 1973, the Zoning Board of Appeals recommended to the Board of Supervisors of De Kalb County that plaintiff's application be

denied. On October 17, 1973, the Board of Supervisors accepted that recommendation and refused to grant the requested changes in zoning or issue the special use permit. Plaintiff instituted this action against defendants, the County of De Kalb and the Zoning Board of Appeals of De Kalb County on March 12, 1974, requesting that the trial court hold the zoning ordinance, as applied to the subject property, arbitrary and unreasonable and bearing no substantial relation to the public health, safety or welfare and order that his proposed uses be allowed. The trial court entered judgment in favor of defendants and plaintiff appeals.

The subject property is an 80-acre tract located in the southwest corner of the intersection of Derby Line and Lincoln Roads in De Kalb County. Plaintiff purchased the south 55 acres in 1973 for $52,000 and the north 25 acres in 1975 for $38,000. It is currently zoned A-Agricultural District under the De Kalb County Zoning Ordinance, as are the neighboring properties, and is vacant farmland. The proposed use of the property, for which the zoning changes and special use permit are sought, is as a single-family residential development for owners of small aircraft. There would be 36 home sites of an acre or more each and each home would be built with an attached airplane hangar. A common paved aircraft landing field would be located on the property with taxiways running to each house. A lot in the far southeast corner of the property, for which the B-3 district zoning was requested, would be set aside for the construction of a 6,000-square-foot building to contain facilities for the maintenance of airplanes and also for the operation of plaintiff's landscaping business and an unspecified wholesale business.

The plaintiff's evidence consisted of the following:

Wilton L. Battles, a city planning and zoning consultant and real estate broker, testified that he made numerous inspections of the subject property and found that about 20% of it was a low lying wet area unsuitable for farming. As a part of his research and analysis he investigated the trend of developments of the proposed type in the United States and found that there were 44 of them, including 4 in the Chicago metropolitan area. He researched the surveys and plans and other aspects of these four area developments, which are all located in rural, unincorporated areas, and was of the opinion that the proposed development was as good, if not better, than any of them. He stated that there was a need for this type of development in the area as many small airports in nearby urban areas were closing down causing many pilots to drive great distances from their homes to the airports where they keep their planes. In his opinion, the highest and best use of the subject property, consistent with the De Kalb County Comprehensive Plan and the health, safety and welfare of the community, would be the proposed use. It would be compatible with the surrounding uses, which are for

farming, and would have no adverse effect on the value of properties close to the site. The additional traffic generated on the roads near this development would be negligible. Figures obtained by Battles from the Illinois Department of Aeronautics revealed that in De Kalb County there were 14 restricted landing areas, 2 heliports, 3 commercial airports, 74 aircraft and 170 private pilots.

James L. Coleman, a real estate appraiser and broker, testified that based on his investigation of sales of surrounding agricultural land the subject property as presently zoned had a value of $1,600 per acre and if plaintiff's proposed use were to be allowed the value of the land would be between $2,000 and $2,500 per acre. He stated that it would not be profitable to farm the subject property in its present condition due to existence of low-lying wet areas. He stated that in his opinion the highest and best use of the subject property would be the proposed development and that it would be compatible with the surrounding farming uses. In Coleman's opinion a hardship would be imposed upon plaintiff if he were not allowed to develop the subject property in the proposed manner.

Hugh J. Cahill, a civil, structural, consulting engineer, testified that he tested the soil of the subject property to determine the feasibility of the use of a septic tank system and found the subject property to be suitable for that purpose. He stated that a well system would be able to provide water to the development and that construction of a three-acre water retention pond proposed by plaintiff on the property would alleviate present drainage problems and serve as a recreational area.

Plaintiff testified that three of the five bordering property owners, as well as several other persons in the area, had signed a petition in favor of his proposed development. A letter admitted in evidence which had been received by him from the Federal Aviation Administration stated that the agency had no objection to his proposed development from the standpoint of safe and efficient use of the airspace by aircraft. He testified further that the State of Illinois Department of Aeronautics had approved his plan although the approval had since expired and he would need to reapply for it.

George Gerlt, a farmer owning property bordering on the west of the subject property, testified that a person could not make a living farming the subject property because there was not enough acreage and there was too much low-lying, wet land. He stated he had no objection to the proposed development. On cross examination he stated that it might be profitable to farm the subject property if it were properly tiled to alleviate the drainage problem.

Walter Naker, a farmer owning property bordering on the east of the subject property, testified that he had owned and farmed the south 40 acres of the subject property between 1950 and 1962 and that, depending

on the weather, between 5 and 10 acres of that portion could not be farmed due to the fact that they were too wet. He also stated that he had signed the petition in favor of the proposed development.

Albert Nordman, an excavator, tiling contractor and former farmer, testified that three years earlier he had been called upon to estimate the cost of correcting the drainage problem on the subject property. At that time about 20 to 25 acres were covered with water and he estimated the cost of tiling the subject property to solve the problem to be about $12,000. He stated that the present cost of that work would be about $30,000.

Charles W. Henderson, a pilot and airplane owner, testified that he had spoken to plaintiff about purchasing a home site on the subject property and was interested in moving to this type of development.

The defendants' evidence consisted of the following:

William H. Lawrence, a city planning and zoning consultant, testified that in his opinion the highest and best use of the subject property is for agriculture, and that the proposed use is incompatible with the surrounding agricultural uses and would have a serious adverse effect on them. His opinion was based upon the following factors: farm land is a great natural resource of the United States; one of the prime policies and purposes of the De Kalb County planning and zoning ordinances is to protect and preserve agricultural lands; and plaintiff's proposed use would contravene this policy by destroying 80 acres of farmland and possibly setting a precedent for further erosion of agricultural uses in the area. On cross-examination he stated that, in general, he believed private pilots should not be permitted to have hangars and landing fields next to their homes. Although he testified he had no opinion as to the suitability of the subject property for farming, he did state that even assuming it was not economically feasible to farm it, his opinion that its highest and best use was for agricultural purposes would not change.

Donald Taylor, one of the developers of Casa de Aero, a similar development located about six miles from the subject property in Kane County, testified that in his opinion there was no need for another such development in the area at the present time because both his and other such developments in the area had available lots. On cross-examination he stated that neighboring farmers experienced no problems on account of the proximity of his development.

Ned Ralston, a neighboring farmer, testified that he farmed the subject property when he owned the south 40 acres from 1968 to 1972 and rented the north 40 acres in 1971 and 1972. He stated that during a year in which there was a spring of average rainfall a total of about 24 acres of the subject property were not farmable due to drainage problems. He further stated that the subject property was marginal farm land because of the

drainage problems but that it could be as productive as other land in the area if it were properly tiled for drainage. In 1971, a De Kalb County soil conservation officer estimated for him that the cost of tiling the property for adequate drainage would be $10,000. When he owned the south 40 acres he considered purchasing the north portion; however, when he learned the cost of tiling he decided the purchase was not economically feasible from a farming standpoint.

The trial court concluded that the De Kalb County Zoning Ordinance, as applied to the subject property, was not unreasonable and entered judgment in favor of defendants. In arriving at its conclusion the trial court found that plaintiff's proposed use would not decrease the value of the surrounding property and that the value of the subject property would increase from $1,600 per acre as presently zoned to between $2,000 to $2,500 per acre if rezoned as requested. The court also found, however, that the subject property would be prime farm land if properly tiled; that if this property had remained a part of a large farm, as it must have once been, the cost of tiling it would be relatively insignificant when amortized over many years; that plaintiff's residential subdivison would not be compatible with the surrounding agricultural uses; and that plaintiff's proposed use would create problems with respect to police and fire protection and sanitary waste and garbage disposal, although no evidence was introduced in this regard.

■ ▌ It is well established that a presumption exists in favor of the validity of a zoning ordinance and the party attacking it must prove by clear and convincing evidence that the ordinance, as applied to the subject property, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. When it is shown that there is no reasonable basis in the public welfare which requires the use limitations imposed and a resulting loss to the property owner, the ordinance fails and the presumption of validity is dissipated. (See, *e.g.*, *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65; *La Salle National Bank v. County of Du Page* (1977), 54 Ill. App. 3d 387, 393-94, 369 N.E.2d 505, 510.) Where it appears from all the facts that there is room for a difference of opinion as to the reasonableness of the zoning classification the legislative judgment must be conclusive. However, mere differences of opinion do not require a finding that the reasonableness of the ordinance is debatable and it then must be upheld. (*La Salle National Bank v. County of Du Page* (1977), 54 Ill. App. 3d 387, 394, 369 N.E.2d 505, 510; *Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239, 244, 353 N.E.2d 61, 65.) In a trial without a jury the trial court is in a superior position to judge the credibility of the witnesses and determine the weight to be given their testimony and this court will not overturn its decision or finding in a zoning case unless it is contrary to the manifest

weight of the evidence. (*American National Bank & Trust Co. v. City of Rockford* (1977), 55 Ill. App. 3d 806, 810, 371 N.E.2d 337, 340-41; *La Salle National Bank v. County of Du Page* (1977), 54 Ill. App. 3d 387, 394, 369 N.E.2d 505, 510.) The principles we have reviewed apply to a request for a special use permit as well as a change in the underlying zoning classification. *La Grange State Bank v. County of Cook* (1977), 53 Ill. App. 3d 79, 86, 368 N.E.2d 601, 607.

A determination as to whether the present agricultural zoning classification is reasonable as applied to plaintiff's property depends, as all zoning cases do, upon the particular facts involved. (*American National Bank & Trust Co. v. City of Rockford* (1977), 55 Ill. App. 3d 806, 810, 371 N.E.2d 337, 340.) Our supreme court has stated that among the factors which may be taken into consideration in determining the validity of zoning ordinances are the following: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69; see, *e.g., Kluse v. City of Calumet City* (1977), 55 Ill. App. 3d 403, 406, 371 N.E.2d 61, 64.

■■ When we apply these factors to the instant case, as the parties urge, we conclude that prohibition of the proposed residential and aircraft landing uses on the subject property by the existing zoning restrictions is unreasonable, but that prohibition of the proposed commercial use, as was also determined by the trial court, is reasonable. The evidence fairly shows that the subject property is largely unsuitable for farming, or is at best marginal farmland, because approximately 25 acres suffer from a serious drainage problem. The present cost of properly tiling it to alleviate this condition was estimated at $30,000. Ned Ralston, a farmer who had owned the south 40 acres and rented the north 40 acres of the subject property as recently as 1972, testified that he had considered making that improvement to it but found the cost of tiling economically unfeasible from a farming standpoint. The trial court's finding that the cost of tiling the property would be relatively insignificant when amortized over many years was apparently based on its belief that the property was once part of a large farm and plaintiff could not now complain that the tiling cost was too high when he had purchased only 80 acres. While we believe it is relevant that plaintiff knowingly purchased a

tract of only 80 acres with a drainage problem that does not preclude our consideration of the fact that the property is marginal farmland and that the cost of improving it for farming purposes would be $30,000, a significant sum. The size and condition of the subject property when purchased by plaintiff is one factor to be considered but is not determinative.

■■ Both plaintiff and Wilton L. Battles, his planning and zoning consultant, testified there was a need for developments of the proposed type in the area. While Donald Taylor testified that there was no such need, it is noteworthy that he had recently developed a similar project nearby and had an obvious competitive interest at stake. If the proposed use were allowed it was estimated that the value of the subject property would rise from $1,600 per acre to between $2,000 and $2,500 per acre with no resultant decrease in the value of any neighboring property. Evidence was introduced that three of the bordering property owners, as well as other persons in the area, were in favor of the proposed use. Plaintiff's experts testified that the proposed use would be compatible with the surrounding farming uses and that it would have no adverse affect on them. Taylor corroborated this testimony by stating that his similar development had caused no adverse effects on its rural surroundings of which he was aware. Plaintiff's experts also stated that they were of the opinion that the highest and best use of the subject property would be the proposed use. The expert testimony of William H. Lawrence to the contrary, that the highest and best use was agricultural, deserves less weight. His view that the proposed use was incompatible with, and would have serious adverse affects on the surrounding farmland was based only on a general objective of the County of De Kalb to preserve a natural resource, farmland, and his bare assertion that this was a goal important to the general welfare of De Kalb County. We note that the combined residential and landing strip development proposed by plaintiff is contemplated by defendants' ordinance as a special use allowed in its E-2 Estate Residential District which permits single-family residences on not less than an acre of land. It would appear that such specialized developments must necessarily be carved out of rural, sparsely populated areas of the county and those would normally be currently applied to and zoned for agricultural purposes. It would be unrealistic to strike such areas from consideration for residential-landing-strip developments; these would appear to be far less compatible to a more densely populated suburban area. While farmland might well be characterized as an essential natural resource, as defendants suggest, the evidence fails to disclose why plaintiff's land specifically should be so preserved for the general benefit. The gain to the public from continuation of the existing restrictions on this 80 acres of marginal

farmland, as suggested by Lawrence, finds little specific support in this record, whereas the hardship imposed upon plaintiff is real and substantial. Under such circumstances this court is fully justified in declaring the zoning restrictions before us to be unreasonable and void insofar as they prohibit a residential-landing-strip development on plaintiff's land. (*Myers v. City of Elmhurst* (1958), 12 Ill. 2d 537, 546, 147 N.E.2d 300, 305; *First National Bank v. County of Cook* (1977), 46 Ill. App. 3d 677, 683, 360 N.E.2d 1377, 1382.) Plaintiff met his burden of showing by clear and convincing evidence that the zoning restrictions as applied to him were unreasonable and the trial court's holding to the contrary is against the manifest weight of the evidence.

■■ We do not believe, however, plaintiff has shown that application of the ordinance, insofar as it denies him the right to commercial use of his property, is unreasonable. Little evidence was presented in regard to this use and the need for it other than that it would include a large building from which plaintiff would operate his landscaping business and an aircraft maintenance garage. These uses would not generally be in keeping with a residential development and we cannot say the decision of the trial court in this regard was against the manifest weight of the evidence.

Therefore, the judgment of the trial court is affirmed insofar as it holds the zoning restrictions prohibiting the proposed commercial uses are reasonable. The judgment of the trial court is reversed insofar as it holds that the zoning restrictions prohibiting the proposed residential and aircraft landing uses are reasonable and the cause is remanded to the trial court with directions that the court hear further evidence as to the particular use and conformation of the aircraft landing field proposed by plaintiff together with any recommendations by defendants as to its regulation and enter an appropriate order permitting the residential and aircraft landing uses in accordance with the evidence presented.

Affirmed in part, reversed in part and remanded with directions.

SEIDENFELD, P. J., and GUILD, J., concur.