THE FIRST NATIONAL BANK OF DES PLAINES, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF COOK, Defendant-Appellant.—(THE VILLAGE OF ARLINGTON HEIGHTS, Intervenor-Appellant.)

First District (3rd Division)    No. 62820

Opinion filed March 9, 1977.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., William E. Kelly, Sheldon Gardner, Jerome S. Schain, Susan A. Blum, and Alan Rhine, Assistant State's Attorneys, of counsel), for appellant.

Raymond F. Simon, of Chicago (John J. George, of counsel), for appellees.

Jack M. Siegel, of Chicago, for intervenor-appellant.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs, The First National Bank of Des Plaines, as trustee, and Rocco DePaul, as beneficial owner, filed a complaint for declaratory judgment against defendant, County of Cook, asking that the Cook County Zoning Ordinance be declared invalid as applied to certain real property. The Village of Arlington Heights was granted leave to intervene. After a trial, the trial court on July 21, 1975, entered judgment for plaintiffs from which an appeal was filed by defendant and intervenor. On appeal they contend that plaintiffs have not overcome the presumption of validity attaching to the existing classification of the subject property under the Cook County Zoning Ordinance, and that plaintiffs have failed to prove that the proposed use is reasonable.

We affirm. The pertinent facts follow.

The subject property is located on the east side of Arlington Heights Road in Elk Grove Township in an unincorporated area of Cook County.

It is improved with a single-family home and circular driveway. Rocco DePaul made application to the Cook County Zoning Board of Appeals to rezone the property from R-3, a single-family residence district under the county zoning ordinance, to B-3, a general business district, to use the existing structure as a real estate office. The Zoning Board of Appeals found that the subject property is considered suitable for use under its present R-3 zoning, in view of its use as a single-family residence and the residential use of adjacent property. Accordingly, the Zoning Board recommended to the Cook County Board of Commissioners that the application for rezoning be denied. The Board of Commissioners concurred in the recommendation of the Zoning Board, and this suit followed.

The Village of Arlington Heights received notice of the proceedings and was granted leave to intervene. The municipal boundary of the Village is contiguous to the subject property to the west. The Village on September 9, 1974, amended its Comprehensive Plan to add territory to the Plan wherein the entire block inclusive of the subject property was designated as an Office Transitional District in the event of annexation to the Village. Such use permits professional offices when developed in accordance with an approved plan for a total site; however, the subject property does not meet the minimum frontage for such development.

The subject property is bordered on the west by Arlington Heights Road. It consists of one-half acre and the improvements are set back 96 feet from the road. Arlington Heights Road is a four-lane arterial highway, which was widened about 15 years prior to trial. About 10 years thereafter a new exit was constructed from the Northwest Tollway onto Arlington Heights Road. This new exit is about one mile south of the subject property. On the west side of Arlington Heights Road, across from the subject property, is a subdivision in which the homes front on the interior streets and their rear yards or side yards are located on Arlington Heights Road. A stockade fence provides a buffer from Arlington Heights Road for some of these homes. These properties on the west side of Arlington Heights Road are in the Village of Arlington Heights and are zoned R-3.

Approximately 450 feet to the north of the subject property is the intersection of Noyes Street and Arlington Heights Road. On the northeast corner, which is located in unincorporated Cook County, is a service station that is zoned B-2. East of the service station is the State of Illinois Highway Maintenance Yard and Garage which is zoned R-3. On the southeast corner of Noyes and Arlington Heights Road, the block on which the subject property is located, is a vacant parcel of land that has been annexed by the Village of Arlington Heights and zoned B-1. Approximately 300 feet north of the subject property is a farm stand.

Single-family homes are interspersed among the subject property, the farm stand, and the vacant lot at the corner. Some are owner-occupied, and others are either vacant or rented.

Approximately 550 feet south of the subject property is the intersection of Council Trails Road and Arlington Heights Road. On the southeast corner is a new office building that is located in unincorporated Cook County. This property was rezoned in 1972 from R-3 to B-3. Directly south of the subject property up to Council Trails Road, the uses are residential and are either owner-occupied or rented.

The subject property is bounded on the east by property that is landlocked and zoned R-3.

At trial, witnesses were called to testify by plaintiffs and defendant, the County of Cook. The intervenor did not call any witnesses. The following is a summary of the testimony of the various witnesses.

Rocco DePaul, the beneficial owner of the subject property, is a real estate broker. He purchased the property in 1974 for $54,000. At that time and since the property has been zoned R-3, a single-family residential district. He requested the zoning change to B-3, a general business district, to allow him to use the property as a real estate office using the existing structure in its present condition. Prior to purchasing the subject property, the property at the north end of his block had been annexed by the Village of Arlington Heights and has since been rezoned from R-3 to B-1. A farm stand is located approximately 300 feet to the north of his property and has been in operation since before he purchased his property. Prior to purchase of the subject property, the property 600 feet south of the site had been rezoned from R-3 to B-3 by the County to permit construction of an office building. DePaul also testified that Arlington Heights Road is a "heavily-travelled" four-lane highway, and that although there are sidewalks on the west side of the road there are no sidewalks on the east side of the road on which his property is located.

On cross-examination DePaul stated that he has rented out the subject property for single-family use since he purchased it, and the rent at the time of trial was approximately $450 a month. The homes immediately adjacent to the south and north of his property are rented for single-family use, although the one to the north is vacant at present. The land just behind the subject property is landlocked. About 3000 feet to the north, also on the east side of Arlington Heights Road, there are commercial uses which are not located at an intersection. Although "quite a few" cars went to the fruit stand from spring through October, no cars did so in the out-of-season months.

Albert Gundelach and John McNamara, real estate appraisers, were called as witnesses on behalf of plaintiffs. They testified essentially as

follows. The trend of development on the east side of Arlington Heights Road is for commercial use. Although the character of the neighborhood is single-family residential, a more natural use for the property is commercial. The highest and best use of the subject property is office use, based on the properties that exist along Arlington Heights Road, the size of the lots, and the fact that on the east side no homes have been built in the last 25 years which face Arlington Heights Road. A real estate office would have no depreciatory effect on the surrounding properties and would not affect the character of the neighborhood. The proposed use would conform to the character of the surrounding uses in size and shape and would "look the same" as the residential uses. The property is not suitable for a single-family residence. It is located on Arlington Heights Road, a "heavily-travelled" arterial highway leading into the heart of the Village of Arlington Heights. It is just one mile north of a recently constructed tollway exit onto Arlington Heights Road. The constant traffic on Arlington Heights Road has a depreciatory effect on single-family residences. Because there are no sidewalks on the east side of the street, there is no ingress or egress from a pedestrian standpoint. The homes on the east side near plaintiffs' property are older than those across the street. The fact that the homes on both sides of plaintiffs' property are rented indicates a deterioration of the residential character of the area and a change toward commercial use of the property. The homes directly across Arlington Heights Road from plaintiffs' property face interior streets, and a privacy fence runs part of the way along Arlington Heights Road. Whereas the current market value for the subject property is about $50,000-$56,000 under the present zoning, the market value of the property if zoned B-3 would be $75,000.

John Lundquist, an area resident, testified for defendant. He lives two doors, or about 200 feet, to the north of the subject property. He did not know the general classification when he purchased his property in 1936, because "there was no zoning at the time." However, he relied on the general zoning classification when he built his home in 1940. He would not have bought the property or built the home had the subject property been zoned B-3 at that time. He had two offers this year to purchase his home and prior had had many offers, but he did not seriously consider any of them.

On cross-examination Lundquist stated that when he purchased his property Arlington Heights Road was a two-lane highway and there was no Northwest Tollway; now Arlington Heights Road is a four-lane highway and the west-bound exit from the Tollway is about a mile from his door. As a result of these road changes, a "great deal" of traffic has been generated. The property located about 600-700 feet north of his

property has auxiliary buildings on it and had been occupied by a sewer contractor with a considerable amount of equipment on the premises. Five of the homes on that block are rented.

Stanton Petry, also an area resident to the north of the subject property, testified for defendant. He relied upon the general classification of the subject property and of his property when purchasing his home, and would not have purchased his home had the subject property been zoned B-3. The farm stand is located two doors north of his property. Only a small percentage of the produce sold there is grown on the premises, and the rest is trucked in.

William McCann, a real estate appraiser, testified for defendant. The highest and best use of the subject property for the "mere term foreseeable future" is its present use, based on the existing improvements which are "good quality" single-family homes in an area almost totally devoted to single-family residential uses, with some agricultural uses. Arlington Heights Road has become a "heavily trafficked" thoroughfare, but its influence on residential use on the east side is not so great because the improvements are set back and are screened by shrubs and trees. To install a new commercial development immediately between existing single-family residences would be to hasten the demise of those properties for residential purposes. The installation of a commercial use would increase traffic and would not be beneficial to the quiet enjoyment of the adjoining single-family residences. There are vacant areas in close proximity to the subject site that are available for business use.

On cross-examination McCann confirmed prior testimony regarding the amount of traffic on Arlington Heights Road. He identified the farm stand located to the north of the subject property as a "legal non-conforming or agricultural use" but added that it would be proper to denote the use "seasonal semicommercial." He stated that insofar as the development of Arlington Heights Road between Golf Road on the south and Central on the north is concerned, this area should be used for commercial purposes. (The subject property is located midway between these two streets.) These are highway-oriented locations that take advantage of east-west and north-south arterial traffic. The trend of development of new single-family homes along Arlington Heights Road has been to use Arlington Heights Road as a rear yard rather than a front yard. New residential development has turned its back, so to speak, on Arlington Heights Road principally because of the traffic. A large number of homes for rent in a single-family residential area would mean a loss of some pride of ownership, and would not be a "particularly healthy" aspect of a single-family community.

Richard Stern, an urban planner, testified for defendant as follows. A suitable use for the subject property is single-family residential use. The

establishment of a real estate office on the subject property would have an adverse effect on the adjoining residential uses insofar as traffic is concerned, and it may tip the scales toward commercial use for that area along Arlington Heights Road.

On cross-examination Stern testified that the highest and best use of the property was for office-transitional purposes, which permits single-family residences as well as offices. An existing structure if not properly developed initially and converted into an office can have an injurious effect on the surrounding property.

■■■ Every property owner has a right to use his or her property in any way, subject only to the restraint necessary to secure the public welfare. (*Northern Trust Co. v. City of Chicago* (1954), 4 Ill. 2d 432, 123 N.E.2d 330.) Although a presumption of validity attaches to an existing zoning ordinance (*Jacobson v. City of Evanston* (1956), 10 Ill. 2d 61, 139 N.E.2d 205), when it is shown that no reasonable basis of the public welfare requires such restriction, the ordinance fails and the presumption of validity is dissipated. *Krom v. City of Elmhurst* (1956), 8 Ill. 2d 104, 133 N.E.2d 1.

■■ In an action to prevent the enforcement of a zoning ordinance as to a particular piece of property, the moving party has the burden of overcoming the presumption of validity of the existing zoning ordinance. To do so requires proof by clear and convincing evidence that the application of the ordinance to the subject property is arbitrary and unreasonable, and that it has no substantial relation to the public health, safety and welfare. (*Exchange National Bank v. County of Cook* (1962), 25 Ill. 2d 434, 185 N.E.2d 250.) If the gain to the public is small from a continuation of the existing restriction compared to the hardship imposed upon the property owner, courts are fully justified in declaring the ordinance unreasonable, confiscatory and void. (*Myers v. City of Elmhurst* (1958), 12 Ill. 2d 537, 147 N.E.2d 300.) It has been recognized that the testimony in cases of this nature may be contradictory, and that the credibility of the witnesses is of great importance. (*Northern Trust Co. v. City of Chicago.*) Therefore, a reviewing court will not disturb the findings of a trial court in this respect unless manifestly against the weight of the evidence. *First National Bank v. Village of Morton Grove* (1973), 12 Ill. App. 3d 589, 299 N.E.2d 570.

The facts which have traditionally been considered in determining the validity of zoning ordinances are set forth as a guideline in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65. We need only discuss the considerations stated therein which are relevant to the case at bar.

The evidence disclosed the following facts concerning the areas surrounding the subject property. Since the time Arlington Heights Road

was widened into a four-lane arterial highway, and since the construction of the new tollway exit, there has not been any new single-family development in the vicinity which faces Arlington Heights Road. The newer single-family homes across from the subject property face interior streets because of the heavy traffic on Arlington Heights Road. All the new structures that have been put up on plaintiffs' side of Arlington Heights Road are commercial. North of the subject property, on the same block, is a mixture of uses and zoning. Three lots north of the subject property is a farm stand, at which most of the produce sold is trucked in. A service station is located at the intersection to the north of the subject property, and to the rear of the station is a State garage used for highway maintenance trucks. Between the subject property and the north corner of the block are single-family residences. The testimony revealed, however, that five houses on the block were rented. South of the subject property, at a distance of about 600 feet, is an office building. The property on which the building stands was rezoned two years ago by the County from R-3 to B-3.

The evidence further shows that Arlington Heights Road is a heavily travelled highway since it became the primary feeder road to downtown Arlington Heights from the Northwest Tollway. There are no sidewalks on plaintiffs' side of Arlington Heights Road.

Plaintiffs' two real estate appraisers stated that the highest and best use for the subject property is office use. Defendant's urban planner stated the highest and best use is office transitional. Although the real estate appraiser called by defendant testified that the highest and best use for the property is its present use, on cross-examination he conceded that the outlook for Arlington Heights Road in this vicinity is for commercial use of the properties.*

Plaintiffs' witnesses further stated that in the past 10 years development on the east side of Arlington Heights Road has been commercial instead of residential. Five of the houses on plaintiffs' block are rented. The real estate appraiser called by defendant stated that if a number of homes are rented, this would not be a healthy aspect of a single-family community.

The evidence further disclosed that the value of the subject property under the existing zoning is about 50 percent less than it would be if rezoned for use as a real estate office.

■■■ We conclude that the record amply supports the finding that

---

* Plaintiffs were granted leave to file in this court a copy of the "Cook County Comprehensive Land Use and Policies Plan" (condensed version, 1976) adopted by the Board of Commissioners on January 19, 1976. At page 26 it provides that the recommendations are not "intended to be the 'last word' as to what should be developed on a specific parcel of property ° ° ° [but] ° ° ° are intended to generally govern the future development of unincorporated land based on conditions and circumstances affecting that land in 1976. ° ° °." The land use therein recommended for the subject property and for the entire block on which it is located is commercial.

plaintiffs have established by competent evidence that the R-3 zoning classification imposed upon the subject property is unjustified and does not bear any substantial relationship to the public health and safety. The law does not require plaintiffs to prove their property is totally unsuitable for the use for which it is presently zoned. To overcome the presumption of validity which attaches to the existing zoning ordinance, it is sufficient if they show that a substantial decrease in value results from a classification that bears no substantial relation to the public welfare. *La Salle National Bank v. County of Cook.*

Appellants argue that even establishing that the subject property is on a heavily travelled street, that it adjoins commercial property, and that rezoning would increase the value of the subject property, is not enough to overcome the presumption of validity of the existing single-family classification, citing *Littlestone Co. v. County of Cook* (1974), 19 Ill. App. 3d 222, 311 N.E.2d 268. Like the court in *Littlestone*, we believe that every zoning case must be decided on its own facts and circumstances, and that the court's decision must be based on the record before it. Aside from this rule, we still find that the facts of *Littlestone* clearly distinguish it from the case at bar. The plaintiffs in *Littlestone* sought to rezone property from R-3 to B-4, in order to install a planned development consisting of three five-story office buildings, a six-story motel and a lake. The surrounding area was residential with some vacant property, except for commercial property on the other side of a nearby tollway. The court in *Littlestone*, at page 236, specifically found that the newly constructed single-family residences, some of which abutted plaintiffs' property, reflected a "trend of development conforming to the existing uses," and presented "strong evidence in support of the suitability of the existing zoning and a determination of the character of the area." In the instant case, however, the evidence shows that the proposed use would "look the same" as the residential uses in the area; there have been no new homes constructed on plaintiffs' side within the past 25 years which front on Arlington Heights Road, and any new improvement on that side of the road is commercial. In addition, many of the homes on plaintiffs' block are rented, rather than owner occupied, which defendant's witness agreed, has an adverse effect on a single-family residential community.

■■ Moreover, we find that plaintiffs have proved that the proposed use is reasonable. In making this determination after finding that the existing ordinance is void, we need not consider whether all possible intervening classifications would also be arbitrary and unconstitutional. *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406; *First National Bank v. Village of Morton Grove.*

The testimony here showed that plaintiffs proposed to use the existing structure in its present condition, and that the proposed use would have

the same appearance as the residential uses. Moreover. although defendant's witness testified that the commercial use would generate traffic, it is uncontroverted that Arlington Heights Road has already become a heavily travelled highway, the structure is well set back on the subject property, and there are shrubs and trees on the property. We find that there was ample evidence to support the trial court's determination that plaintiffs' proposed use of the property as a real estate office was reasonable.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.