LA SALLE NATIONAL BANK, Trustee, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

First District (4th Division)   No. 62988

Opinion filed November 17, 1977.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellant.

Burke, Weber and Egan, of Chicago (Thomas T. Burke and Edward J. Egan, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The city of Chicago appeals from a determination by the trial court that a R-1 zoning classification is arbitrary and unreasonable as applied to the plaintiff's property. We affirm the trial court's determination, particularly in view of the fact that the loss to the plaintiffs was not shown to result in any enhancement of the public welfare. We also hold that this court's affirmance in *La Salle National Bank v. City of Chicago* (1972), 4 Ill. App. 3d 266, 280 N.E.2d 739, of a prior refusal to find the zoning classification invalid is not *res judicata* in light of the change of circumstances.

The beneficial owner of the property (hereinafter plaintiff) acquired title in 1958. At that time the property was part of the unincorporated area of Cook County and was zoned F for farming. However, at the time of the purchase, the plaintiff was informed by one of the county officials that the property would soon be zoned R-5 (Multi-family residential) and in fact, in 1960 the property was so rezoned under a comprehensive zoning plan. The property, however, was later annexed, without the plaintiff's consent, into the city of Chicago and zoned R-1. This classification would only permit two single-family dwellings to be built on the presently vacant land. The plaintiff, by this suit, seeks to have the property rezoned R-4 in order to allow him to build a 17-unit, three-story apartment building with 17 parking spaces.

The property in question is located at 4505 North Cumberland Avenue in the city of Chicago. It has 100 feet of frontage on the west side of Cumberland Avenue and a depth of 150 feet. Cumberland Avenue is a four-lane divided highway with holding patterns, left-turn bays and various center traffic controls, leading to a cloverleaf at the Kennedy expressway about a mile and a quarter north of the subject property. Needless to say, it is an extremely heavily traveled highway. The subject property is approximately in the center of a square mile bounded by Lawrence Avenue on the north, Irving Park Road on the south, River Road on the west and Canfield Avenue on the east. The west half of the square mile is in Chicago, and the northeast half is in the village of Norridge. Since Cumberland Avenue separates the two municipalities, the village of Norridge is directly across the street to the east of the property.

The area on the west side of Cumberland Avenue facing Lawrence Avenue, is all zoned for business and general services (B5-1) except for a small area west of the corner which is zoned for multifamily residences. The corner contains a large shopping center. South of that along Cumberland, still in an area zoned B5-1, is a large complex of apartment buildings, one building being seven stories high and four others being five stories high. Together they contain a total of nearly 300 apartments. There

is also a bank. Wilson Avenue meanders along the south edge of the complex. From Wilson Avenue to the next street to the south lies the only R-1 zoned land on the west side of Cumberland until one reaches the forest preserve. The land facing Cumberland is all vacant. The particular property at issue lies about 250 feet south of Wilson. Immediately to the south and west of it lies the other piece of land zoned R-1. Located thereon is a large commercial wholesale greenhouse. According to the defendant's witnesses this is not a nonconforming use but a permitted use under R-1 zoning. Heavy trucks go from Cumberland Avenue along the street lying south of the subject property to the greenhouse. To the west of the B5-1 property, the subject property and the greenhouse lies in an area zoned R-2. The land nearest these properties is all vacant, the nearest construction being several blocks away. To the south of the greenhouse lies a subdivision zoned R-2. None of the homes face on Cumberland but back up to it. South of this lies Montrose Avenue and then the forest preserve.

On the east side of Cumberland, in Norridge, there is, as there is on the west side, a large shopping center at the corner of Cumberland and Lawrence. South of that on Cumberland lies a stable which used to be a nonconforming use. However, the land has recently been rezoned for a shopping center. South of this lies a bowling alley. Immediately south of that lies a subdivision zoned R-1. Like the subdivision on the west side of Cumberland, the lots, with a few exceptions, do not face Cumberland but back up to it. This subdivision runs from an area just northeast of Wilson nearly down to the forest preserve. It is interesting to note, however, that while nearly all the lots in the subdivision have homes on them, the five next to Cumberland and across the street from the property zoned R-1 on the west are vacant. These are the only lots in the subdivision which face Cumberland. Between the subdivision and the forest preserve is another stable. It is not clear from the zoning maps submitted by the city whether this is still a nonconforming use or whether that property has also been rezoned for business.

The plaintiff, an experienced developer who qualified as an expert appraisal witness, testified that the highest and best use of the property as of 1975 was multifamily, R-4. He estimated that the fair cash market value of the property as presently zoned was $25,000 whereas its value if rezoned R-4 would be $102,000. He has had, over the years, signs on the property advertising it for sale, although such signs were often vandalized or knocked down. He also advertised in various journals and circularized the availability of the lot to all builders whose names he had on a mailing list but has been unable to sell the property as zoned.

Francis S. Lorenz and Duane Linden, both acknowledged experts, also

testified for the plaintiff. Both agreed that the highest and best use of the property was as a multifamily development in conformity with the development to the north. Both also agreed that the proposed use would not have a depreciating effect on other surrounding uses. As pointed out by Lorenz, the single-family residential developments are all orientated toward side streets and away from the noise and pollution of Cumberland Avenue. This differs from the subject property where any construction must face Cumberland. Lorenz also testified that only two houses could be built on the property under the present zoning. He estimated the value of the property as presently zoned was $30,000; as rezoned it would be worth $100,000.

Two witnesses testified for the defendant. The first, Richard J. Mckinnon, had been employed by the city as a city planner for the last 19 years. He testified that when the property was taken into the city it was given the most restrictive zoning (R-1) because they did not know what the development would be. In 1960 he felt the owner should have a holding pattern on the property until they had firmer indications as to what the development of the area would be. In 1975, the time of the trial, he still felt there should be a holding pattern on the property and that it, therefore, should remain R-1.

The other witness for the city, John McNamara, testified that he believed the highest and best use of the property would be its development as presently zoned but he gave no explanation as to why he believed this. He agreed with Lorenz that the value of the property as presently zoned is $30,000. However, he estimated its value if zoned R-4 to be $85,000. When asked on cross-examination if there would be any depreciatory effect on any other property he announced "there would be that depreciatory effect on the property that has already been established by the highway of Cumberland Avenue." We must conclude therefore that the defendant's witnesses do not disagree with the testimony of the plaintiff's witness that the proposed apartment would have no depreciatory effect of its own on the surrounding property.

There were no other witnesses.

The trial judge concluded that Cumberland Avenue directly to the east of the property was a natural zoning buffer. He found that the value of the subject property was diminished by the particular zoning classification. He also found this diminution did not promote the health, safety and welfare of the general public and that there was little or no gain to the public from the particular zoning restriction. Considering this and other factors, he held the R-1 zoning to be unconstitutional as applied to the property in question and found that the highest and best use would be in accordance with an R-4 classification.

## I.

■■ Every property owner has a right to use his or her property in any way, subject only to the restraint necessary to secure the public welfare. (*Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 182 N.E.2d 722; *First National Bank v. County of Cook* (1977), 56 Ill. App. 3d 677, 360 N.E.2d 1377.) Zoning laws which limit that right are enacted pursuant to the police power of the State and when that power is delegated to a city or village to permit them to interfere with property rights by means of a zoning ordinance, such ordinance to be valid must have a real and substantial relationship to the public health, safety, moral or general welfare. (*Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 182 N.E.2d 722; *Kovack v. Village of La Grange Park* (1959), 18 Ill. 2d 233, 163 N.E.2d 451.) Although a presumption of validity attaches to an existing zoning ordinance (*Jacobson v. City of Evanston* (1956), 10 Ill. 2d 61, 139 N.E.2d 205), where it is shown that no reasonable basis of public welfare requires such a restriction, the ordinance falls and the presumption of validity is dissipated. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65; *First National Bank v. County of Cook* (1977), 46 Ill. App. 3d 677, 360 N.E. 1377.) Where the evidence shows a destruction of property value by application of the ordinance, the legislation may be justified only if it appears that it substantially promotes the public health, safety, morals or general welfare and is necessary for that reason. *Myers v. City of Elmhurst* (1958), 12 Ill. 2d 537, 147 N.E.2d 300.

■■ In an action to prevent the enforcement of a zoning ordinance as to a particular piece of property, the moving party has the burden of overcoming the presumption of validity of the existing zoning ordinance. To do so requires proof by clear and convincing evidence that application of the ordinance is arbitrary and unreasonable and that it has no substantial relationship to public health, safety and welfare. *Exchange National Bank v. County of Cook* (1962), 25 Ill. 2d 434, 185 N.E.2d 250; *First National Bank v. County of Cook* (1977), 46 Ill. App. 3d 677, 360 N.E. 1377; *Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239, 353 N.E.2d 61.

■■■ The courts of this State have utilized a number of factors, frequently reiterated in the reported cases, to consider in the determination of the validity of zoning ordinances. These factors include the existing use and zoning of nearby property; the extent to which property values are affected by the particular classifications; the extent to which the destruction of the plaintiff's property values promotes the health, safety, morals or general welfare of the public; the relative gain to

the public as compared to the hardship imposed on the individual property owner and the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65; *Hartung v. Village of Skokie* (1961), 22 Ill. 2d 485, 177 N.E.2d 328; *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 324 N.E.2d 406.) To these often repeated factors, the courts have also added such intangible items for consideration as the care with which the legislative body planned its land use development. (*Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406; *Locker v. City of McHenry* (1967), 89 Ill. App. 2d 457, 231 N.E.2d 685.) Ultimately, if it appears that the gain to the public from a continuation of the existing restriction is small compared to the hardship imposed upon the property owner, the court is fully justified in declaring the ordinance unreasonable, confiscatory and void. (*Hartung v. Village of Skokie* (1961), 22 Ill. 2d 485, 177 N.E.2d 328.) Indeed, it must do so, for it has long been recognized in Illinois that where it clearly appears that the relative gain to the public is small when compared with the hardship imposed upon the property owner by the zoning restrictions, there is no valid basis for the exercise of the police power and it becomes the duty of the court to declare the restriction unconstitutional. *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 324 N.E.2d 406; *Kovack v. Village of La Grange Park* (1959), 18 Ill. 2d 233, 163 N.E.2d 451; *Exchange National Bank v. County of Cook* (1955), 6 Ill. 2d 419, 129 N.E.2d 1; *Wheeling Trust & Savings Bank v. County of Lake* (1975), 31 Ill. App. 3d 636, 333 N.E.2d 705; *O'Connor v. Village of Palos Park* (1975), 31 Ill. App. 3d 528, 333 N.E.2d 276.

The able trial judge determined that the highest and best use of the property was for multifamily housing. He determined that the present zoning did destroy the value of the plaintiff's property and that there was no evidence it did promote the health, safety and welfare of the public. The reasonableness of the classification must be determined on the facts and circumstances of each case. (*Hartung v. Village of Skokie* (1961), 22 Ill. 2d 485, 177 N.E.2d 328; *Johnson v. City of Elgin* (1975), 31 Ill. App. 3d 250, 333 N.E.2d 287; *Scott v. City of Springfield* (1967), 83 Ill. App. 2d 31, 226 N.E.2d 57, *appeal denied* (1967), 36 Ill. 2d 632.) Since the credibility of the witnesses is generally of great importance, the trial court's findings should be sustained unless they are against the manifest weight of the evidence. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65; *Wheeling Trust & Savings Bank v. County of Lake* (1975), 31 Ill. App. 3d 636, 333 N.E.2d 705; *Scott v. City of Springfield* (1967), 83 Ill. App. 2d 31, 226 N.E.2d 57, *appeal denied* (1967), 36 Ill. 2d 632.

■■   The trial court's implied finding that the property is not suited for single family residences is supported by the evidence. The subject property is one of only a couple of lots in the city of Chicago, on Cumberland between Lawrence and Montrose zoned R-1. Should the plaintiff attempt to construct single family residences between Lawrence and Montrose which face Cumberland, on either side of the street. All other housing in the area either is behind the business and apartment buildings which act as a buffer between them and Cumberland, or else face inward rather than out onto Cumberland Avenue. The unsuitability of this property for single housing, considering its limitations and the fact the houses would have to face onto Cumberland, is suggested by the fact that the only other lots where the houses would have to face the street (those few lots directly across the street from the property in question) are all vacant except for one used for a real estate office. We agree, of course, with the defendant that the mere fact that the property is situated on a main traffic artery does not necessarily render it unsuitable for residential use. (*Cosmopolitan National Bank v. City of Chicago* (1961), 22 Ill. 2d 367, 176 N.E.2d 795 (construction and sale of single family homes along street not prevented by heavy traffic); *First National Bank v. City of Springfield* (1976), 42 Ill. App. 3d 566, 356 N.E.2d 367; *Elmer Clavey, Inc. v. City of Highland Park* (1966), 75 Ill. App. 2d 464, 220 N.E.2d 93.) On the other hand, the existence of heavy traffic conditions on a thoroughfare scarcely constitutes an argument in support of a residential classification (*Hartung v. Village of Skokie* (1961), 22 Ill. 2d 485, 177 N.E.2d 328; *Exchange National Bank v. County of Cook* (1955), 6 Ill. 2d 419, 129 N.E.2d 1; *Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239, 353 N.E.2d 61), especially single-family housing.

The lots north of the subject property on both sides of Cumberland are zoned for business. On them are shopping centers, a stable, a bowling alley, a bank and several apartment houses. The property immediately to the southwest of the subject property, while zoned residential, has a commercial greenhouse on it. While the remaining land in the area is zoned single-family residential (R1 and R2), none of the lots, except for the five empty lots and that on which the real estate office is built, face onto Cumberland. Only the business and multiple-family residence properties do that. It seems obvious, therefore, that the subject property takes its character from the multifamily residential property and nonresidential property to the north which, like it, face Cumberland Avenue, rather than from the residential properties which face away from the street. (Compare *Wheeling Trust & Savings Bank v. County of Lake* (1975), 31 Ill. App. 3d 636, 333 N.E.2d 705.) We cannot accept the defendant's argument that Wilson Avenue serves as a sufficient dividing line between the nonresidential and multiple-family uses to the north and

the subject property in light of the fact, among others, that the wholesale greenhouse lies not to the north but to the southwest of the subject property and heavy trucks travel to the greenhouse along the road just south of the property.

There is no doubt that the plaintiff will suffer an economic detriment if the zoning remains R-1. Even the defendant's witness testified that the property would be worth nearly three times as much if zoned R-4 than if zoned R-1. Furthermore, the plaintiff testified that he had been unable to sell the property as zoned.

What is remarkable about this case is the total lack of any evidence indicating that this detriment bore some relationship to the public good. No neighbors objected to the rezoning or testified that they believed it would lower their property values. The plaintiff's witnesses testified specifically it would not and this was not controverted by the city's witnesses. McNamara testified that the only depreciatory effect would be that which has already been created by the highway. Nor was any suggestion made that the building of multifamily residences instead of single family residences would in some way increase traffic, school or other public problems. Indeed, we would find it difficult, in light of a four-lane divided highway and the recent development of several apartment buildings which together contain 290 units, to believe that the building of a single building containing merely 17 units could somehow further depreciate the values of the area. (Compare *Kovack v. Village of La Grange Park* (1959), 18 Ill. 2d 233, 163 N.E.2d 451.) In short, there is not one scintilla of evidence in the record to contradict the plaintiff's testimony that the intended construction would not depreciate surrounding property values or to suggest that there is some relationship between the zoning restriction and public safety or welfare.

We also note that the city has not suggested any valid reason for continuing this zoning restriction. There has been no comprehensive plan carefully laid out. To the contrary, the property was only zoned R-1 upon annexation because the city did not know what would develop and therefore wanted to keep it in a holding pattern. Now, 15 years later, it apparently still desires to keep it in a holding pattern to see what will develop.

■■ We conclude, therefore, that the record amply supports the finding that the plaintiff has established by competent evidence that the R-1 zoning imposed upon the property is unjustified and does not bear any substantial relationship to public health and safety. The law does not require the plaintiff to prove that the property is totally unsuited for the use for which it is presently zoned. To overcome the presumption of validity which attaches to an existing zoning ordinance, it is sufficient if the plaintiff shows that a substantial decrease in value results from a

classification that bears no substantial relationship to the public welfare. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65; *First National Bank v. County of Cook* (1977), 46 Ill. App. 3d 677, 360 N.E.2d 1377; *Wheeling Trust & Savings Bank v. County of Lake* (1975), 31 Ill. App. 3d 636, 333 N.E.2d 705.

## II.

■■ The defendant, however, argues that the plaintiff has not shown that multifamily housing would be any more reasonable a use than single-family housing. We agree that there is no evidence in the record to show that a business use would not be reasonable. But the plaintiff is not required to prove that all other possible zoning classifications would be arbitrary and unconstitutional. (*First National Bank v. Village of Morton Grove* (1973), 12 Ill. App. 3d 589, 299 N.E.2d 570; *Stalzer v. Village of Matteson* (1973), 14 Ill. App. 3d 891, 303 N.E.2d 489.) The reasonableness of the use of this property for multiple-family housing despite the presence of a busy highway, a commercial greenhouse and business property near Lawrence is adequately shown by the existence of the five apartment houses just north of Wilson from which, in part, the subject property takes its character—apartment houses which did not exist at the time this court noted in 4 Ill. App. 3d 266 that if the property by reason of the nearby nonresidential uses was rendered inappropriate for single-family residences, it would not be more appropriate for multifamily purposes.

## III.

The city, however, contends that the plaintiff is now barred from seeking relief by virtue of the judgment by Judge Epstein in 1969, affirmed by this court in 1972 in 4 Ill. App. 3d 266, which found the R-1 zoning to be constitutional as applied to the subject property. The plaintiff contends first that this issue was not properly raised below and second, that because of the change in circumstances the doctrine of *res judicata* is not applicable. While we agree with the first contention only in part we find that because of the change in circumstances the trial court was not barred from determining that the classification was no longer valid as applied to the property in question.

The issue of *res judicata* must be pled and proven by the party wishing to rely on it. (23 Ill. L. & Prac. *Judgments* §§431-435 (1956); *Logan v. Presbyterian-St. Luke's Hospital* (1968), 92 Ill. App. 2d 68, 235 N.E.2d 851.) The defendant did not plead in its answer that the issue had already been decided. However, this failure was waived when the plaintiff did not object when the defendant raised the issue at trial. (23 Ill. L. & Prac. *Judgments* §433 (1956).) We have examined the record with some care

and it seems clear to us that defendant's constant mention of the prior judgment at pretrial during the examination of the witnesses and during closing argument put both plaintiff and Judge Dunne on notice that the prior judgment existed, that that judgment had been for the city and that the city was relying on it. Indeed, Judge Dunne in his oral opinion referred to the fact Judge Epstein had rendered a contrary decision. Judge Dunne at the same time pointed out that he did not know what evidence had been presented to Judge Epstein.

■■■ However, on this appeal it appears that the defendant wishes to do more than just rely on the existence of the prior judgment. It wishes to rely on the facts testified to and proven in the first case, *e.g.*, depreciation of the surrounding area. This it cannot do for two reasons: First, the defendant never attempted to introduce the record of the first proceeding even when it was altered by Judge Dunne to the fact that he did not know what evidence was presented in the earlier case. The burden was on the defendant to offer the record into evidence. (Cleary, Handbook on Illinois Evidence 40, 45, 46 (2d ed. 1963); see *State Farm Mutual Automobile Insurance Co. v. Grebner* (1971), 132 Ill. App. 2d 234, 269 N.E.2d 337.) It was not for the court or the plaintiff to seek out such record, as the defendant appears to contend on appeal. Second, the determinations in the first trial of such issues as depreciation does not serve as evidence in the second trial for the simple reason that the mere fact that something was true in the 1960's does not prove it is still true in the 1970's. Moreover, the case was affirmed, and it is the affirming court's determination, not that of the trial court that is *res judicata*—assuming of course that there is any discrepancy between the two. Compare *Reighley v. Continental Illinois National Bank & Trust Co.* (1944), 323 Ill. App. 479, 56 N.E.2d 328, *aff'd* (1945), 390 Ill. 242, 61 N.E.2d 29.

While the defendant below referred only to the trial court's opinion, we will consider the effect this court's prior determination in 4 Ill. App. 3d 266 has on the present case. The purposes of the doctrine of *res judicata* are to protect the defendant from harassment and the public from multiple litigation. (*Adams v. Pearson* (1952), 411 Ill. 431, 104 N.E.2d 267.) And the doctrine has been applied to zoning cases to accomplish precisely those purposes. (*Garrett Park v. Montgomery County Council* (1970), 257 Md. 250, 262 A.2d 568, where three weeks after affirmance of reclassification, the city filed a petition to have the property reclassified back on the grounds that the first case decided on an erroneous premise; *Love v. City of Jackson* (Miss. 1971), 248 So. 2d 633, where after the trial court on appeal by an intervenor reversed an order rezoning property, the owner did not appeal but simply refiled for rezoning; and see *Eagle Thrifty Drugs & Markets, Inc. v. Hunter Lake Parent Teachers Association* (1968), 84 Nev. 466, 443 P.2d 608, where the court granted an injunction

where an application for rezoning was made yearly for several years and no change in circumstances had intervened.) Nevertheless, the doctrine should only be applied as fairness and justice require (46 Am. Jur. 2d *Judgments* §438 (1969)), and it can only apply to facts and conditions as they existed when the judgment was rendered. (46 Am. Jur. 2d *Judgments* §443 (1969); and see *City of Girard v. Girard Egg Corp.* (1967), 87 Ill. App. 2d 74, 230 N.E.2d 294.) And as pointed out in *City of Miami Beach v. Prevatt* (Fla. 1957), 97 So.2d 473, 477:

> "Without entering into an extended discussion of the subject, the doctrine of res judicata or estoppel by judgment is one which should be applied in zoning cases with great caution. It is, of course, an essential element, among others, of res judicata, that there be an identity of causes of action and this means an identity of the facts essential to the maintenance of the action. The former decisions of this Court relating to the validity of the zoning ordinance with reference to the lands in the large area under discussion were necessarily based upon the facts existing at that time. In fast growing areas, such as the City of Miami Beach, changes occur with great rapidity; it cannot, therefore, be said that, even where the same parties are involved, an adjudication of the reasonableness of a zoning ordinance at any given time is necessarily res judicata or constitutes an estoppel by judgment in subsequent litigation between the same or different parties. This question was dealt with and discussed by the Wisconsin Supreme Court in Ward v. Prospect Manor Corp., 188 Wis. 534, 206 N.W. 856, 861, 46 A.L.R. 364. In that case the Wisconsin Court pointed out:
>
>> '* * * The present decree acts only upon existing facts, and is based upon the conditions presently existing in the neighborhood. If and when conditions change, the court will have power to deal with such changed conditions without any embarrassment by reason of this decree. This decree declares the rights of the parties as they exist by reason of the present situation. It cannot affect a changed situation which may arise in the future. We do not think it necessary that the decree specifically authorize modifications as conditions in the neighborhood change. A decree or judgment disposes of the rights of the parties as they presently exist and as they appear from the evidence in the case.' "

■■■ It is clear that there has been a material change of conditions since the first opinion. Cumberland Avenue is no longer merely a "major arterial highway" as described in 4 Ill. App. 3d 266. It is a four-lane

divided highway with holding patterns, left-turn bays and various center traffic controls. It is no longer true that the entire square mile with few exceptions is zoned single family. Not only are the corners at Lawrence and Cumberland zoned for business or general services, but these classifications extend down on both sides of Cumberland towards the subject property—one of the nonconforming uses (a stable) having recently been rezoned for a supermarket. It was stated in the earlier opinion that the quarter-mile of land bounded by Cumberland on the east, Lawrence on the north, Montrose on the south and River Road on the west is developed entirely for single-family zoning except for two nonconforming uses, a greenhouse and a small hot dog stand. At that time the only multiple-family dwellings near the subject property were located in Norridge several blocks away. On the east side of Cumberland, in Norridge, as the court pointed out, were only the single-family residences and certain nonconforming uses (stables, bowling alley). It was clear that the property at that time took its character from the single-family residences rather than from the few business uses at the northwest corner of Lawrence and Cumberland.

All of this has completely changed. There are now two shopping centers and a third, even closer, is possible. Multiple-family housing is no longer several blocks away—it is less than a block away. The greenhouse is not merely a nonconforming use but a permitted use so it can be enlarged if desired. Now the nonresidential or at least the non-single-family residential uses dominate the property not the single family housing which does not face onto Cumberland. Also at that time the property appeared to be inappropriate for multifamily housing; now with multifamily housing directly to the north, it is no longer true that "it would [not] be more appropriate for multi-family [housing]." 4 Ill. App. 3d 266, 271, 280 N.E.2d 739, 743.

The court in the first opinion also found that the length of time the property had been vacant was not significant in determining the validity of the ordinance in view of the plaintiff's limited efforts to dispose of the property. The property now has been vacant for a much longer period of time, despite increased efforts to sell it. What is more important, however, is that the property across from the subject property has also now remained vacant for a long time, thus reflecting the undesirability of the lots for single-family housing.

Lastly and most importantly, there was evidence in the first case that each single-family property owner would suffer a substantial financial loss if multifamily dwellings were introduced into the neighborhood because of the increased density. As we have already noted, there was no evidence at the trial below that the nearby property would suffer any reduction in value. Certainly it could not suffer because of the "introduction of multi-

family dwellings" since multifamily dwellings have already been introduced.

The defendant, however, argues that these changes are not material because most of them were permitted under the zoning which existed in 1969 (the time of the original trial court opinion), citing *Mistretta v. Village of River Forest* (1971), 2 Ill. App. 3d 102, 276 N.E.2d 131, *appeal denied* (1972), 49 Ill. 2d 576. It is true that *Mistretta* held that "[t]o the extent that alleged changed circumstances arise solely from an intensified use of property within pre-existing zoning classifications, they cannot be deemed 'material' " (2 Ill. App. 3d 102, 105, 276 N.E.2d 131, 134), on the theory that in analyzing the zoning scheme in the initial litigation, the court by necessity has to consider the effect of the neighboring property, as improved to its fullest maximum use, on the subject property. We are unable to agree with that reasoning at least as applied to the present case because it is clear from the appellate court's opinion in 4 Ill. App. 3d 266 that the court in fact considered only the then existing uses of the neighboring property and did not rule on the question of what effect that property would have on the subject property if it were developed to its fullest maximum use under the existing zoning. For example, the court repeatedly pointed out that the nearest multifamily zoning was in Norridge several blocks away. It pointed out that there was evidence there would be a serious reduction in the value of the single-family residence if multifamily were introduced. Thus, it is clear that the court did not consider what effect multifamily housing practically next door to the subject property would have either on it or on the question of detriment even though such housing was permitted under the existing zoning classification. And it seems quite proper that the court should have chosen to consider only the then existing use as well as present zoning (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65), rather than to also consider future possible uses which might never happen. In any event, since it is clear that the appellate court in *La Salle National Bank v. City of Chicago* (1972), 4 Ill. App. 3d 266, 280 N.E.2d 739, did not rule on the effect a change in the use of neighboring property would have on the subject property even though such change was permissible under the zoning existing at the time of the first trial, we cannot say that our consideration of the effect such changes had is precluded by that judgment.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.