EDMUND J. BURKE et al., Plaintiffs-Appellants, v. THE VILLAGE OF GLENVIEW et al., Defendants-Appellees.

First District (2nd Division)   No. 1—91—1785

Opinion filed November 23, 1993.—Rehearing denied January 12, 1994.

William J. Harte, of Chicago, for appellants.

Randall, Gayle & Patt, of Glenview, for appellees.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Plaintiffs appeal from an order granting summary judgment in favor of defendants. The trial court found that plaintiffs' declaratory judgment action was barred under the doctrine of *res judicata*. For the reasons that follow, we affirm the decision of the trial court.

In 1981, plaintiffs Edmund J. and Jane D. Burke filed a declaratory judgment action seeking a determination that defendants, the Village of Glenview, its president and board of trustees, acted arbitrarily and unreasonably in denying their application for a zoning variance. Glenview's zoning ordinance required that all single-family residences in the R-1 zoning area, where the Burkes' property was located, be built on lots of no less than one acre (43,560 square feet).

The Burkes entered into a contract to purchase 14,747 square feet of land. They intended to adjoin this land to the 1.25 acres of land they already owned, then subdivide the property to create two lots. The first would contain their present family residence consisting of 43,570 square feet. The second lot, however, would consist of only 25,970 square feet. It is on this second lot that the Burkes wished to build a smaller single-family residence and for which they sought a variance from the R-1 zoning classification. The contract to purchase the additional land was contingent upon their obtaining the variance.

The Burkes had previously sought a variance in 1977 and again in 1981 but were denied each time for failing to meet the standards for a variance.

Glenview's zoning ordinance mandates that seven standards be met in order to allow a variance:

"1. the particular physical surrounding, shape or topographical condition of the specific property involved would result in a practical difficulty or particular hardship upon the owner *** as distinguished from a mere inconvenience, if the strict letter of the regulation were carried out;

2. the conditions upon which the petition for a variation is based are unique and would generally not be applicable to other property within the same zoning classification;

3. the purpose of the variation is not based exclusively upon a desire to realize economic gain;

4. the alleged difficulty or hardship has not been created by any person presently having an interest in the property;

5. the granting of the variation will not be materially detrimental to the public welfare or injurious to the other property or improvements in the neighborhood in which the property is located;

6. the proposed variation will not impair an adequate supply of light and air to the adjacent property ***;

7. the variation, if granted, will not alter the essential character of the locality."

In the 1981 complaint, the Burkes alleged that prior to their application for a variance Glenview had, on at least two occasions, granted a variance from the R-1 zoning regulation for the construction of residences on lots of less than one acre.

The trial court held a hearing on the Burkes' 1981 action on May 11, 14 and 15, 1985. The evidence showed that in 1970, Glenview had allowed a construction company, Green Bay Builders, to build residences on two lots, three-fourths of an acre in size. These lots, however, were originally one acre each in area size but had been reduced from the requisite one acre when Glenview created a road dedication for Wagner Road. The result of the Wagner Road dedication was to decrease both lots by one-fourth of an acre.

The Burkes contended that their situation was similar to that of Green Bay because Green Bay was allowed to build on a substandard lot. The Burkes also argued that since they were the only applicants to apply for a variance since the Green Bay variances in 1970, granting their application would not result in a "domino effect," ultimately diluting the integrity of the R-1 zoning classification in their area. The evidence, however, showed that in addition to the

Burkes' property, there were nine other lots in the R-1 zoning classification where a subdivision similar to that proposed by the Burkes could be attempted. The defendants argued that the Burkes failed to satisfy all seven of the standards required to grant a variance and, therefore, the zoning ordinance was properly applied.

The trial court entered judgment in the 1981 action in favor of defendants on May 22, 1985, finding that all seven of the standards for variance must be met and that a failure to satisfy each and every standard necessitates denial of the variance. Of those seven standards, the Burkes satisfied only three, namely, standards 3, 5 and 6.

The trial court further found in the 1981 action that the Green Bay variances of 1970 did not provide "applicable precedent" for plaintiffs' case. The evidence, the trial court determined, "clearly demonstrates that each of the Wagner Road lots was originally one acre and that each lot was reduced to 3/4 of an acre *by the Village.*" (Emphasis added.) The trial court concluded, however, that the Burkes' proposed variance was "self created" and did not benefit the general public. Thus, the trial court found that the reason for the Green Bay variance itself distinguished it from the Burkes' proposed variance.

The Burkes appealed the trial court's determination in the 1981 action to this court. On September 10, 1986, this court affirmed the trial court's decision in a Rule 23 (107 Ill. 2d R. 23) order.

In the Rule 23 order, this court found that Glenview's zoning ordinance was conjunctive and "is a condition precedent to granting a variance." Furthermore, this court held that since the trial court found, and the parties did not contest, that the Burkes complied with the third, fifth and sixth variance standards, its review would be limited to a determination of the Burkes' compliance with the remaining four standards.

With respect to the first standard, this court found that "the record is devoid of any evidence that the particular physical surroundings, shape or topographical condition of the [the Burkes'] property would cause a particular hardship to [them] if the R-1 zoning classification [were] strictly enforced." Furthermore, we determined in that appeal that plaintiffs' mere assertion that the hardship imposed upon Green Bay is the same as that imposed on them "is insufficient to establish that this standard has been met and the facts of this case merit reversal."

The Burkes, this court concluded, also failed to meet the second variance standard because the evidence produced at trial demonstrated that the lot that they intended to purchase and combine was not unique. We noted that the testimony of Robert Duchek revealed

that there were "at least nine other properties in the same area in which the same type of subdivision could be attempted."

The alleged difficulty or hardship created by enforcement of the zoning ordinance, this court found, was created by the Burkes themselves, contrary to the mandate of the fourth variance standard. Rejecting the Burkes' argument that they were similarly situated to Green Bay Builders, this court determined that "[t]he substandard size of the Wagner Road lots resulted from a public roadway dedication rather than combining area yards. Green Bay Builders did not choose to create the substandard Wagner Road lots." The Burkes, this court continued, "clearly had a choice" in combining their property to create an additional lot.

For the same reasons, this court determined that the Burkes failed to meet the seventh standard that the variation, if granted, would not alter the essential character of the locality. Finding that the reason for granting the variation to Green Bay was "vastly different" from the Burkes' situation, we affirmed the trial court's determination that the Wagner Road variation did not provide precedent for the Burkes' case.

The Burkes' final contention on appeal of the 1981 judgment was that the only reason for the seventh standard was to avoid a "flood of people" from seeking variations from the one-acre minimum. This court found, however, that the Burkes did not demonstrate that their proposed variation "will not cause a 'domino effect' in the area." The evidence showed that there were at least nine other properties where a subdivision similar to that of the Burkes could be attempted.

We denied the Burkes' petition for rehearing of our determination. Our supreme court denied the Burkes' subsequent petition for leave to appeal on February 6, 1987.

The instant action that is the subject of this appeal commenced on January 24, 1989, when the Burkes filed a complaint for declaratory judgment against the instant defendants, the Village of Glenview, its president and board of trustees. The allegations of the 1989 complaint were virtually identical to those of the 1981 complaint, except that, in paragraph 22 of the 1989 complaint, the Burkes alleged that since denial of their request for relief in the prior action there had been "a substantial change in circumstances in the area to-wit: the formerly vacant Brach property which contain[ed] approximately seven (7) acres was sold in one acre lots."

The 1989 complaint further alleged that "one of the main concerns of the court in the prior case was that if the Burkes were granted the relief they sought[,] some builder could likewise requests [sic] lots under one acre for the Brach property." "It was suggested

by the court," the complaint stated, "that [such a subdivision] would have a destabilizing effect on the area." The complaint concluded by alleging that the aforementioned concern no longer existed "inasmuch as the number of lots other than the Brach lot that this same relief could be granted is extremely small."

On March 7, 1989, defendants filed a combined section 2—615 and section 2—619 motion to dismiss the complaint on the grounds that (1) the Burkes' cause of action was barred by the doctrine of *res judicata* in that the Burkes were relitigating the same issue involving the same parties or their privies; (2) the Burkes were required to file an administrative review action from the Glenview Zoning Board of Appeal's (ZBA's) denial of their most recent application for a variance (November 28, 1988); and (3) the Burkes failed to state a claim for declaratory relief.

The Burkes responded to the motion to dismiss by arguing that the sale of the Brach property in one-acre lots was "a substantial change in circumstances" as this was the issue that "most concerned" the trial court. The Burkes further contended that the Administrative Review Law (ARL) did not apply as they had not been served with a copy of the ZBA's decision as required by section 3—103 of the ARL. (Ill. Rev. Stat. 1991, ch. 110, par. 3—103.) With respect to defendants' third ground for dismissal, the Burkes contended that while the trial and appellate court "mentioned" particular standards, both courts "failed to address" the third variance standard, that the proposed variance not be based solely to realize economic gain, from the standpoint of Green Bay Builders. The Burkes contended that Green Bay developed the Wagner Road lots solely for economic gain and that this fact was not addressed by the appellate court.

On June 23, 1989, the trial court denied defendants' motion to dismiss. Defendants filed their answer on July 18, 1989. After discovery, defendants moved for summary judgment, asserting that the Burkes' action was barred by *res judicata*.

In support of the motion for summary judgment, defendants argued that the development of the Brach property was not legally sufficient to constitute a material change in circumstances in order to be excepted from the doctrine of *res judicata*. Defendants further argued that the development of the Brach property was consistent with the preexisting zoning ordinance that had been in place since 1964. This intensified use, they argued, did not remove the bar of *res judicata*.

On April 29, 1991, the trial court entered judgment for defendants. In entering judgment for defendants, the trial court noted that the 1981 litigation established that the Brach property was "only one

of nine" properties that could be subdivided contrary to the R-1 zoning restriction. The trial court further found that *res judicata* prevented the Burkes from relitigating the issues of uniqueness of the area and the Green Bay variation.

The Burkes' subsequent motion to vacate the trial court's April 29, 1991, order was denied on May 15, 1991. Plaintiffs now appeal the grant of summary judgment.

The doctrine of *res judicata* states that once a cause of action has been adjudicated by a court of competent jurisdiction, it cannot be retried again between the same parties or their privies in new proceedings. The doctrine has three essential elements to its application: the cause of action, the parties or their privies and the subject matter must be the same in both cases. (*Schoenbrod v. Rosenthal* (1962), 36 Ill. App. 2d 112, 116, 183 N.E.2d 188.) The doctrine springs from the principle of fairness which holds, as a basic tenet, that there must be an end to litigation once a controversy has been decided on the merits. *Hughey v. Industrial Comm'n* (1979), 76 Ill. 2d 577, 583, 349 N.E.2d 1164.

With respect to zoning matters, however, *res judicata* will not apply to the earlier judgment where there has been a material change in circumstances. (*Mistretta v. Village of River Forest* (1971), 2 Ill. App. 3d 102, 105, 276 N.E.2d 131.) A "material" change occurs where the area in question has undergone subsequent changes resulting from zoning amendments and variations in the use of the surrounding property. (*Mistretta*, 2 Ill. App. 3d at 105.) Nonetheless, an intensified use of the surrounding property consistent with a preexisting zoning classification is not considered a material change in circumstances and *res judicata* will apply to the earlier judgment. *Mistretta*, 2 Ill. App. 3d at 105.

In their appeal, the Burkes argue that there have been two "material" changes in circumstances since the termination of the prior litigation. The first change, the Burkes assert, relates to the status of the property they proposed to annex to their current residence. The second "material" change is the development of the neighboring Brach property.

A finding that these changes are, in fact, material accomplishes two tasks. Such a finding avoids the effect of *res judicata* and also demonstrates that the Burkes now meet standards 1, 2, 4 and 7 of the Glenview zoning ordinance which, in the prior judgment, the court held they failed to meet. For the reasons set forth below, neither of these facts constitutes a "material" change in the facts sufficient to avoid the effect of *res judicata*.

## 1. THE BURKES' SUBSEQUENT PURCHASE OF THE ADDITIONAL LAND

During the pendency of this case in the trial court, the Burkes purchased the additional 14,747 square feet of land that they had originally been under contract to purchase in the prior proceeding. As the owners of the property, the Burkes assert that, unlike the prior litigation, their land is now "unique," a requirement under Glenview's variance standard, and that they are now suffering a "hardship" by Glenview's refusal to allow them to build on a substandard lot. Their property is "unique," the Burkes argue, because defendants did not show that any property in the R-1 zoning classification has been combined in a similar manner.

As in the earlier proceeding, there is no evidence to show that the particular physical surrounding or shape of the Burkes' property would cause them a particular hardship if the R-1 zoning classification is enforced. Moreover, the question of the "uniqueness" of the Burke property, as it originally stood or with the additional land, was adjudicated in the prior proceeding. The trial court there specifically held that there was "no evidence" that the Burkes' property was unique because nine other properties in the R-1 zoning classification could be combined and developed in the same manner proposed by the Burkes.

Likewise, the question of hardship was also decided upon in the earlier case. Similar to the "uniqueness" standard, the trial court in the 1981 case found that the Burkes failed to meet this standard of the Glenview ordinance as well.

In the 1981 case, the trial court found that, pursuant to Edmund Burke's testimony, a denial of a variance was more an "inconvenience" than a hardship. "Even if a hardship were found," the trial court noted that such a hardship was "self-created" because the Burkes purchased the land "*knowing*" that they had to obtain a variance in order to build on it. (Emphasis in original.)

The Burkes here argue that because they are no longer under a contract to purchase but now own the property, they suffer a real hardship by denial of a variance. The purchaser's knowledge of the zoning restriction, while not an absolute bar to a zoning challenge, is a factor in considering whether a variance has been improperly denied. (*Goslin v. Zoning Board of Appeals* (1976), 40 Ill. App. 3d 40, 42, 351 N.E.2d 299.) That the Burkes now own the property does not preclude the effect of the earlier judgment where the hardship of which they complain is "self-created."

## 2. THE DEVELOPMENT OF THE BRACH PROPERTY

The Burkes point to the development of the neighboring Brach property as the second "material" change in circumstances. The seventh standard for variation under Glenview's ordinance is that the proposed variation not alter the essential character of the area.

Since the termination of the 1981 litigation, the Brach property, which consisted of seven acres, was divided into individual one-acre lots. The Burkes argue that because of this fact, there is no longer a "threat" that their proposed variance would create a precedent for other owners to attempt a variation similar to theirs, thereby diluting the integrity of the R-1 zoning classification. They cite to *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 369 N.E.2d 1363, in support of their position that where a prior judgment did not rule on the effect a change in the use of neighboring property would have on the subject property, consideration of such change is not precluded by the earlier judgment. *La Salle*, however, is factually distinct from the Burkes' case and does not support their position.

In *La Salle*, the plaintiff-developer sought to change the zoning classification along an area of land on Cumberland Avenue from R-1, which permitted only single-family residences, to R-4, which would allow the plaintiff to construct multiple-family units. (*La Salle*, 54 Ill. App. 3d at 946.) At the time of the prior judgment, the multiple-family units near the subject property were in Norridge, several blocks away. Finding that property took its character from the neighboring property, the court found that since the prior judgment, multiple-family housing was now located much closer to the subject property and that non-single-family residential uses "dominated" the area neighboring the subject property. *La Salle*, 54 Ill. App. 3d at 956.

The Burkes' reliance on *La Salle* is misplaced. In *La Salle*, the subject property's entire character was defined in terms of the neighboring property. That property, the court found, was almost completely comprised of multiple-family dwellings, similar to that which the plaintiff wanted to build. In this case, however, the neighboring property has been developed consistent with the zoning classification as it now exists. Where the only change in the surrounding property is an intensified use under the preexisting zoning classification, that change is not material and *res judicata* will bar subsequent litigation. *Mistretta*, 2 Ill. App. 3d at 105.

As the trial court noted in the 1981 judgment, the Brach property is only one of nine properties that could be developed contrary to the existing R-1 zoning classification. Indeed, following the *La-Salle* court's reasoning, if the Burkes' property takes its character

from its neighboring property, then it should be developed in a manner consistent with the existing R-1 zoning classification. This second change in circumstances, the development of the Brach property, is not grounds for avoiding the application of the doctrine of *res judicata.*

Zoning is a legislative function. A zoning ordinance is presumed valid and the party challenging the ordinance must show by clear and convincing evidence that the ordinance, as applied, is arbitrary, unreasonable and bears no relation to the public health, safety or welfare. (*Kleidon v. City of Hickory Hills* (1983), 120 Ill. App. 3d 1043, 1053, 458 N.E.2d 931.) In order to be entitled to a variance, an applicant must satisfy all of the requirements stated in the ordinance. *Hale v. First National Bank* (1978), 57 Ill. App. 3d 310, 315, 372 N.E.2d 959.

In the 1981 proceeding, the court found that the Burkes failed to satisfy four of the seven standards necessary to obtain a variance. The Burkes have not shown, by this action, that they have satisfied the remaining standards or that the facts here have changed substantially to avoid the effects of *res judicata.*

As a final matter, the Burkes assert that Green Bay Builders did not comply with the third and fourth standards for a variance at the time its application was approved in 1970. The Green Bay variance issue was fully litigated in the 1981 proceeding. In that case, the Burkes, acknowledging that they had not fully satisfied all the standards for a variance, argued that the Green Bay variance provided precedent for their application.

The Burkes' argument here is essentially the same issue argued from a different tack. The doctrine of *res judicata* applies not only to matters actually adjudicated, but also to matters which might have been adjudicated in the earlier proceeding. (*Hughey*, 76 Ill. 2d at 583.) The specific standards Green Bay may have failed to meet might have been raised and adjudicated in the earlier case. The doctrine bars plaintiffs from raising and arguing this issue again in this proceeding.

Affirmed.

SCARIANO and GREIMAN, JJ., concur.